WALTER NEWKIRK *et al.*, Plaintiffs and Counterdefendants-Appellants and Cross-Appellees, *v.* JOSEPH G. BIGARD, Indiv. and d/b/a B & B Oil Company, *et al.*, Defendants-Appellees—(Joseph G. Bigard, Indiv. and d/b/a B & B Oil Company, *et al.*, Counterplaintiffs-Appellees and Cross-Appellants).

Fifth District No. 5—83—0415

Opinion filed March 6, 1984.—Rehearing denied August 6, 1984.

HARRISON, J., dissenting in part.

Richard Briles Moriarty, of Newton, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellee Brad Evilsizer.

Lawrence Eaton, of Eaton, Eaton & Tomaw, of Newton, for other appellees.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

At issue here is an order of the Illinois Mining Board integrating oil and gas interests in certain Jasper County land and establishing a drilling unit composed of that land. The question presented is whether that order was invalid for failing to prescribe the time and manner in which owners of interests in the proposed unit could elect to participate in it. (Ill. Rev. Stat. 1981, ch. 96½, par. 5436(d).) We hold that it was, but only in part.

The land affected by the order of the Mining Board is a 40-acre tract which was owned prior to 1961 by Paul A. and Mildred A. Lucas (the Lucases) and Cora E. Lucas. On May 4, 1961, these owners conveyed the north 30 acres of this land to plaintiff Walter Newkirk. The grantors reserved unto themselves a one-half interest in the oil, gas and minerals associated with that property for a period of 20 years from the date of the conveyance "and as long thereafter as oil, gas or other minerals are produced from operations commenced within said 20 year period." On November 13, 1980, the Lucases executed an oil and gas lease to Joseph G. Bigard. This lease, with a primary term extending to February 28, 1981, covered all of the mineral interests of the Lucases in the 40-acre tract.

In late 1980, the Lucases and Bigard filed a petition with the Mining Board. The petitioners sought integration of the mineral interests of the Lucases and Newkirk in the 40-acre tract and the issuance to Bigard of a drilling permit covering that land. They also requested that the Mining Board prescribe the time and manner in which all owners in the proposed drilling unit may elect to participate in it. In the petition it was also suggested, as alternatives, that the board

"1. Make provision for the payment by all those who elect to participate therein, of the reasonable actual costs thereof plus a reasonable charge for supervision and interest.

2. Provide one or more equitable alternatives if Walter Newkirk does not elect to participate in the risk and cost of the drilling and operation or operations of a well he may elect to surrender his leasehold interest to Joseph G. Bigard on some reasonable basis and for a reasonable consideration which if cannot be agreed upon shall be determined by the Mining Board.

3. Provide that Walter Newkirk may elect to participate in the drilling and operation or operations of the well on a limited or carried basis upon the terms and conditions to be just and reasonable."

Notices of the hearing on the petition were sent to all interested parties, including Walter Newkirk. A hearing was held in Springfield on December 1, 1980, at which testimony was heard. Newkirk was not present. On December 11, 1980, the board issued an order integrating the mineral interests of Newkirk and the Lucases in the 40-acre tract and establishing two 20-acre drilling units, one composed of the west half of the tract and the other consisting of its east half. Bigard was authorized to drill wells in both units. The order also stated

"that Walter Newkirk shall participate in the drilling unit described above to the extent of 37.5% of the 7/8ths working interest and 37.5% of the 1/8th royalty interest in the drilling unit. The participation factor shall be in accordance with Section 22.2(d) of 'An Act in Relation to Oil, Gas, Coal and Other Surface and Underground Resources and Rules and Regulations,' being a part of Chapter 96 1/2 of the Illinois Revised Statutes. The participation factor is determined to be:

1. 37.5% of the costs and expenses of all surface equipment and 37.5% of the costs of operating the well concerning with the production to be borne by Walter Newkirk and 62.5% of the costs and expenses of all surface equipment and 62.5% of the costs of operating the well concerned with first production to be borne by Joseph G. Bigard.

2. 56.25% of actual costs and expenses of drilling, testing and completing the well to be borne by Walter Newkirk and 43.75% of actual costs of drilling, testing and completing said well to be borne by Joseph G. Bigard."

On January 19, 1983, Walter Newkirk and his wife, June Fay Newkirk, commenced this action in the circuit court of Jasper County. Although, as in many actions pertaining to mineral rights, the pleadings were amended to allow the inclusion and deletion of parties, the defendants in these proceedings are those parties who claim interest in the 40-acre tract by virtue of the Lucases' lease to Bigard, in addition to Brad Evilsizer, the director of the Illinois Department of Mines and Minerals. The Newkirks' complaint was in four counts. Count I averred that the December 11, 1980, order of the Mining Board was invalid, and thus the Newkirks requested the court to declare that order void and declare the rights of the parties accordingly. Count II alleged that there had been no production of oil or gas from the north 30 acres of the tract before May 4, 1981. In this count, the Newkirks sought a declaration that the Lucases' reservation of mineral interests had expired by its own terms. In count III, the Newkirks demanded damages from Bigard and the Lucases for removing oil and gas from

the north 30 acres of the tract even though, as alleged, they were aware that the integration order of the Mining Board was invalid. Based upon the same removal of oil and gas, the Newkirks sought damages in count IV from the Lucases for breach of warranties contained in the 1961 deed.

The Lucases, Bigard, and all defendants claiming interests through their lease (the Lucas-Bigard defendants) filed a motion to dismiss the Newkirks' complaint in its entirety. This motion asserted that the complaint constituted an impermissible collateral attack on the order of the Mining Board. Defendant Evilsizer employed similar reasoning in his separate motion to dismiss the complaint, but further contended that the order of the Mining Board was valid.

The Lucas-Bigard defendants also filed a counterclaim against the Newkirks. Count I was for slander of title, and in count II these defendants sought to quiet title to their mineral interests in the 40-acre tract. The Newkirks moved to dismiss both counts of this counterclaim. Additionally, the Newkirks moved for summary judgment on counts I and II of their complaint. After several attempts to schedule all of these motions for a single hearing, a nonevidentiary hearing was held on April 28, 1983. The court entered a written order on June 14, 1983.

In that order, the court granted the motion of the Lucas-Bigard defendants (also referred to as counterclaimants) to dismiss counts I and III of the Newkirks' complaint, but denied that motion as to counts II and IV. Since defendant Evilsizer was a party only to count I, his motion to dismiss was also granted. The court granted the Newkirks' motion to dismiss count I of the counterclaim, but denied that motion as to count II. It denied the Newkirks' motion for summary judgment on counts I and II of their complaint and ordered all parties to pay their own costs. All dismissals of counts were made without leave to amend, and the court specifically found no just reason for delaying enforcement or appeal of its order. 87 Ill. 2d R. 304(a).

The Newkirks appeal from the dismissal of counts I and III of their complaint, the dismissal of defendant Evilsizer from the proceedings, the denial of their motion for summary judgment on counts I and II of their complaint, the denial of their motion to dismiss count II of the counterclaim, and the court's order pertaining to costs. The counterclaimants have filed a cross-appeal in which they seek reinstatement of count I of their counterclaim. Defendant Evilsizer and the Newkirk-Bigard defendants have filed separate briefs in this court.

■ As a preliminary matter, we must address a question of appealability. Defendant Evilsizer argues that we must dismiss that portion of the Newkirks' appeal relating to the court's denial of summary judgment on the first two counts of their complaint. We agree. The denial of a motion for summary judgment is not appealable (*Hildner v. Fox* (1974), 17 Ill. App. 3d 97, 308 N.E.2d 301; *La Salle National Bank v. Little Bill "33" Flavors Stores, Inc.* (1967), 80 Ill. App. 2d 298, 225 N.E.2d 465), and Supreme Court Rule 304(a) findings do not render a nonfinal order appealable. (*Peterson v. Tazewell County* (1975), 29 Ill. App. 3d 915, 330 N.E.2d 888.) That part of the Newkirks' appeal taken from the denial of their motion for summary judgment is therefore dismissed.

The counterclaimants oppose the Newkirks' complaint because, as they state, the method provided in section 10 of "An Act in relation to oil, gas, coal and other surface and underground resources" (Ill. Rev. Stat. 1981, ch. 96½, par. 5416) is the exclusive means to review decisions of the Mining Board. Under that section, "[a]ny interested person affected by this Act or by any rule, regulation or order made or promulgated by the Mining Board hereunder, who may be dissatisfied therewith, shall have the right to file a suit in the Circuit Court of the county wherein is situated any part of the land which is the subject matter of such action, to test the validity of any provision of this Act or any rule, regulation or order made or promulgated hereunder." According to the counterclaimants, this section of the statute justified the circuit court in dismissing counts I and III of the complaint, which requested the court to evaluate the order of the Mining Board.

■ The fallacy in this argument is that the counterclaimants have not demonstrated that the Newkirks' complaint does not comply with section 10. That provision includes no time constraints, and it may not be argued that the complaint was untimely. Section 10 states only that a person affected by an order of the board may sue in a county in which the subject land is located in order to test the validity of that order. The Newkirks' complaint fits that description and, as such, it may be maintained in the circuit court, over the objections advanced by the counterclaimants.

The gist of the Newkirks' argument on appeal is that the trial court erred in not finding the board's integration order to have been void *ab initio*. This erroneous interpretation of the order, contend the Newkirks, underlies the court's dismissal of counts I and III of the complaint and its failure to dismiss count II of the counterclaim. The Newkirks urge us to find the integration order invalid and reverse the

challenged portions of the trial court's decisions.

To resolve this argument, we must examine section 22.2 of "An Act in relation to oil, gas, coal and other surface and underground resources ***" (Ill. Rev. Stat. 1981, ch. 96½, par. 5436) in some detail. This statute provides for the compulsory pooling or integration of mineral interests in separate tracts within or to establish a drilling unit. An integration order

> "shall authorize the drilling, equipping, and operation, or operation, of a well on the drilling unit; provide who may drill and operate the well; prescribe the time and manner in which all the owners in the drilling unit may elect to participate therein; and make provision for the payment by all those who elect to participate therein of the reasonable actual cost thereof, plus a reasonable charge for supervision and interest." (Ill. Rev. Stat. 1981, ch. 96½, par. 5436(d).)

If the board is requested, its order

> "shall further provide for one or more just and equitable alternatives whereby an owner who does not elect to participate in the risk and cost of the drilling and operation, or operation, of a well may elect to surrender his leasehold interest to the participating owners on some reasonable basis and for a reasonable consideration which, if not agreed upon, shall be determined by the Mining Board, or may elect to participate in the drilling and operation, or operation, of the well, on a limited or carried basis upon terms and conditions determined by the Mining Board to be just and reasonable." Ill. Rev. Stat. 1981, ch. 96½, par. 5436(d).

The Newkirks maintain that the board's order did not comply with section 22.2. First, they assert that the order was deficient in not prescribing the time and manner in which Walter Newkirk could have elected to participate in the units. Second, they argue that the order improperly failed to offer Newkirk the alternative to surrender his leasehold interest or participate in the drilling and operation of the well on a limited or carried basis, despite the request of the petitioners that these options be offered to him. These omissions, claim the Newkirks, render the integration order void *ab initio*.

█ Evilsizer and the counterclaimants reply that inasmuch as the Mining Board has the authority to enter orders pertaining to the integration of mineral interests, and as notice was given to all affected owners, its integration order cannot be attacked collaterally. However, the Mining Board, as an administrative agency, is a creature of statute, having no general or common law powers. It must find within the

statute the authority to act, and if it "lacks the inherent power to make or enter the particular order involved," that order may be attacked at any time or in any court, either directly or collaterally. (*City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 112, 357 N.E.2d 1154, 1155, quoting *Barnard v. Michael* (1945), 392 Ill. 130, 135, 63 N.E.2d 858, 861.) Since the Newkirks' complaint alleged that the Mining Board exceeded its statutory authority in entering the integration order, that argument is cognizable in the circuit court. Moreover, by pointing to specific deficiencies in the order, the Newkirks are not relying upon conclusory allegations of void agency action, as Evilsizer contends.

■ Returning to the merits of the Newkirks' complaint, it is apparent that the Mining Board's order did not comply with the statute under which it was entered. First, the order failed to establish a procedure whereby Walter Newkirk could elect to participate or not to participate in the drilling units. Evilsizer maintains that Newkirk had the opportunity to make such an election at the hearing before the Mining Board, and this is all that is necessary under section 22.2. This position, though, ignores the plain language of that provision, which states that the integration order itself shall establish the time and manner in which a party may make such an election. The purpose of this provision is to ensure that that party knows what he is electing to accept or reject. Requiring an interest owner to object to an integration order at the hearing would not necessarily accomplish that result, in the absence of a statutory requirement that the specifics of the proposed order be announced in final form at that hearing.

The second deficiency of the integration order was in failing to set forth alternatives for Walter Newkirk's participation or nonparticipation, as requested in the petition for the order. Evilsizer argues that the burden of requesting those alternatives falls upon the individual who desires them, and Newkirk, having failed to do so, cannot now complain of the absence of the alternatives from the integration order. This contention is not supported by the wording of section 22.2. That provision obliges the Mining Board to offer those alternatives "if requested." It does not say that the request must be made by the party to whom the alternatives would be offered. The petition to the board asked that Walter Newkirk be allowed to surrender his leasehold interest or participate in the units on a limited or carried basis. In failing to give Newkirk the opportunity to select from among those alternatives, the integration order exceeded the statutory authority granted to the Mining Board.

■ The Newkirks insist that as a result of our findings, we can

only hold the entire integration order void *ab initio*. We do not agree. A court in its review of an administrative decision has the authority to affirm or reverse the action of the agency in whole or in part. (*Basketfield v. Daniel* (1979), 71 Ill. App. 3d 877, 390 N.E.2d 492.) We believe that a partial declaration of invalidity is appropriate in our review of the integration order. This is because the provisions governing Walter Newkirk's financial participation in the operation of the units are entirely separable from the provisions of the order establishing the units and allowing drilling on them. As Evilsizer correctly observes, the very essence of compulsory integration is that an affected owner can do nothing to prevent it, even if he has the right to select the manner of his participation in drilling operations. In denying Walter Newkirk the ability to determine the nature of his financial stake in the units, the Mining Board took no action which could have led to any other outcome concerning the establishment of the units and the issuance of the drilling permits. Consequently, the order of the board is valid insofar as it integrates the mineral interests of the parties, establishes two drilling units and allows Bigard to drill wells on those units. The remainder of the order is invalid.

Having evaluated the integration order, we must now determine how our conclusions affect the complaint and count II of the counterclaim. Count I of the complaint sought a declaration that the order was void *ab initio* and a declaration of the rights of the parties given the invalidity of the order. As we have found the integration order not to have been void *ab initio*, we affirm the dismissal of this count. However, since we have found portions of the order invalid, that dismissal should be modified to allow the Newkirks leave to amend this count to conform to our decision.

In count III, the Newkirks requested damages for wrongful drilling operations performed on their land. They claimed that those operations were unlawful because the integration order was unlawful. But, we have held that the establishment of the units and the issuance of drilling permits were proper. Therefore, the dismissal of this count with prejudice is affirmed. For the same reason, we affirm the trial court's denial of the Newkirks' motion to dismiss count II of the counterclaim, which is an action to quiet title.

In their cross-appeal, the counterclaimants insist that count I of the counterclaim states a cause of action for slander of title and therefore should not have been dismissed by the trial court. Slander of title is a false and malicious publication, either oral or written, of words which disparage a person's title to property, resulting in special damages. (*Whildin v. Kovacs* (1980), 82 Ill. App. 3d 1015, 403 N.E.2d

694; *Home Investments Fund v. Robertson* (1973), 10 Ill. App. 3d 840, 295 N.E.2d 85.) The documents which the counterclaimants point to as establishing their claim are the Newkirks' complaint and the accompanying notice by publication, which appeared in the Newton *Press-Mentor*.

The counterclaimants assert that the filing of a complaint in court can be the basis for a slander of title action. The authority cited for this proposition is *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 418 N.E.2d 431, in which a slander of title complaint was premised upon the filing of a *lis pendens* notice. But, a *lis pendens* notice is not a necessary part of the judicial process itself. It is instead a private act, undertaken outside the scope of judicial proceedings, for the purpose of calling to the attention of all the world the pendency of litigation affecting the designated real property. (See *West Investment Co. v. Moorhead* (1953), 120 Cal. App. 2d 837, 262 P.2d 322.) *Pecora* thus does not support the counterclaimants' position that a slander of title action may be based upon the filing of a complaint and further publication necessitated by that filing.

Indeed, in *Nolin v. Nolin* (1966), 68 Ill. App. 2d 54, 215 N.E.2d 21, the court held that a slander of title action could not be premised upon the presentment of a will for probate. The court reasoned that the absolute privilege normally associated with statements made in connection with legal proceedings (*Libco Corp. v. Adams* (1981), 100 Ill. App. 3d 314, 426 N.E.2d 1130) also attaches to the presentment of a will for probate and bars the slander of title action. This logic applies to count I of the counterclaim here. To allow a complaint for slander of title to rest upon the institution of judicial proceedings and the publication of notice required by those proceedings would place too great a price on resorting to the courts to settle disputed titles. Accordingly, count I of the counterclaim was properly dismissed with prejudice.

In conclusion, we take the following action. That portion of the Newkirks' appeal taken from the denial of their motion for summary judgment is dismissed. The dismissal of count I of the complaint is affirmed, as modified to reflect a dismissal with leave to amend. That modification requires us to reverse the dismissal of Evilsizer as a defendant. The dismissal with prejudice of count III of the complaint and count I of the counterclaim is affirmed, as is the denial of the motion to dismiss count II of the counterclaim. We need not address the Newkirks' request for costs and fees at this point in the litigation, because we remand this cause to the circuit court of Jasper County for further proceedings consistent with our opinion.

464

Appeal dismissed in part, affirmed in part, affirmed as modified in part, reversed in part, remanded.

JONES, J., concurring.

JUSTICE HARRISON, dissenting in part:

In my view, the December 11, 1980, order of the Mining Board was void *ab initio*, and the circuit court erred in dismissing counts I and III of the Newkirks' complaint. Administrative agencies such as the Mining Board have no general or common law powers; rather, their authority is strictly limited to that conferred by the statutes creating them. (*City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 113, 357 N.E.2d 1154.) When an order of an agency exceeds this statutory authority, it is void. 65 Ill. 2d 108, 112.

Here, the statute governing the board's actions dictates that integration orders "prescribe the time and manner in which all the owners in the drilling unit may elect to participate therein." (Ill. Rev. Stat. 1981, ch. 96½, par. 5436(d).) Nothing in that statute grants to the board the authority to simply declare, as it did here, that a given landowner must participate in a drilling unit without having first had the opportunity to decide whether he wishes to do so. Thus, since the order of December 11, 1980, was one which the board had no statutory power to make, the dismissal of counts I and III of the Newkirks' complaint was improper.