JAMES R. HILDNER et al., Plaintiffs-Appellants, v. W. D. Fox et al., Defendants-Appellees.

(No. 58189;

First District (5th Division)—January 11, 1974.

James Lee Daubach, of Fiduccia & Daubach, of Chicago, for appellants.

Greenstein and Solotke, of Chicago, for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

In the trial court, plaintiffs, James and Virginia Hildner, sought a declaratory judgment that their indebtedness to defendant, American Oil Company, secured by a trust deed on plaintiffs' home and a security agreement on certain of plaintiffs' inventory, was extinguished by American Oil's repossession and subsequent sale of the inventory without having given plaintiffs prior notice of the sale. W. D. Fox, trustee for the trust deed for American Oil was named as a co-defendant herein. Plaintiffs and defendants presented cross-motions for summary judgment. In denying plaintiffs' motion, the court found: (1) that genuine issues of material fact existed regarding whether it was necessary for American Oil to give prior notice of the sale to plaintiffs; (2) that even if notice had been necessary, the proper remedy under section 9—507 of the Illinois Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—507) is not a discharge of the debt; and (3) that Section 9—104(j) of the Commercial Code exempts from its coverage the creation or transfer of interests in realty (Ill. Rev. Stat. 1971, ch. 26, par. 9—104(j)). Defendants' motion for summary judgment was granted on these same findings. On plaintiffs' motion for rehearing, the trial court sustained its entry of summary judgment for defendants solely on the basis that the Code was not applicable to these transactions. (Ill. Rev. Stat. 1971, ch. 26, par. 9—104(j).) Plaintiffs appeal from the denial of their motion for summary judgment and from the granting of defendants' motion for summary judgment.

On March 24, 1969, plaintiffs entered into a financing arrangement whereby American Oil advanced plaintiffs credit to purchase a certain gasoline station from it. In order to secure said credit, they executed: (1) a security agreement covering certain inventory, after acquired property in inventory, and proceeds from the sale of inventory that would be purchased by the gasoline station and sold in its course of business;[1] and (2) a trust deed and second mortgage on their home. In March, 1969, plaintiffs commenced operation of the retail service station, as lessee of American Oil. The starting capital loaned by American Oil for

---

[1] The financing agreement covered:
"All tires, batteries, automobile accessories and general service station stock, equipment and furniture initially or subsequently at any time hereafter acquired as a result of a purchase, loan or credit from The American Oil Company, including the proceeds, by whatever nature or variety constituted, of the sale, assignment or other disposition of the above property. The lien hereof applies on a 'continuing general lien' or 'after-acquired property' basis to all future property of like nature owned by Debtor and located upon the said premises."

this venture amounted to $8000 excluding interest. This loan was to enable plaintiffs to purchase merchandise in the amount of $6700, to pay defendant a gasoline security deposit of $800 and to provide $500 in working capital for the operation of the service station. This secured loan account provided for monthly payments of $247.02 commencing April 30, 1969. Plaintiffs advised this court on oral argument that they also had an unsecured account for approximately $7400 owed to American Oil at the commencement of this action.

In March, 1970, the station was closed and plaintiffs filed voluntary petitions for bankruptcy in federal district court for the Northern District of Illinois. On March 21, 1970, inventory that had been subject to the security agreement described above, valued by American Oil at $4333.39, was removed by drivers of American Oil and sold to various other dealers who normally sold products distributed by that defendant. Plaintiffs were given no prior notice of this sale. The proceeds from the sale were credited against the unsecured merchandise account.

On November 15, 1971, plaintiffs filed a complaint alleging that American Oil repossessed the collateral covered by the security agreement, that there was a failure by American Oil to give notice of the sale of the collateral under the provisions of the Illinois Uniform Commercial Code, that there was a failure to apply the proceeds of the sale to plaintiffs' secured loan account, that by reason of these failures plaintiffs' indebtedness secured by the trust deed was cancelled and satisfied; that American Oil and Fox refused to issue a release of the trust deed, wherefore, plaintiffs prayed for a declaratory judgment declaring the indebtedness secured by the trust deed be discharged and cancelled with costs assessed to defendants.

American Oil's answer admitted only that it held a trust deed on plaintiffs' realty, but denied that the lien was not effective. It affirmatively alleged that the Illinois Uniform Commercial Code was inapplicable since section 9—104(j) of the Commercial Code specifically excluded interests in realty and furthermore, if plaintiffs had any interest in the real estate in question, such interest would have been transferred to the trustee in bankruptcy pursuant to the Bankruptcy Act.

Plaintiffs' reply denied the applicability of Commercial Code section 9—104(j) and denied that their interest in the real estate had been transferred to the trustee in bankruptcy. Plaintiffs alleged that the homestead exemption act exempts the transfer of their home to the trustee in bankruptcy.

The sole issue presented for review is whether American Oil's failure to give plaintiffs notice of the sale of the repossessed inventory ex-

tinguished the secured debt thereby requiring the cancellation and release of the trust deed in satisfaction thereof. The entry of summary judgment for defendants raises a preliminary question as to its appealability as a final order.

OPINION

■■ Plaintiffs contend that the trial judge erroneously concluded that section 9—104(j) of the Commercial Code suspends the applicability of the Illinois Uniform Commercial Code as to the entire transaction between the parties. They therefore argue that summary judgment was improperly entered for defendants.

Section 9—104(j) provides:

"This Article does not apply  *  *  *  to the creation or transfer of an interest in or lien on real estate,  *  *  *."

This exemption of interests in or liens on real estate would clearly exclude from the Commercial Code's coverage the trust deed securing part of plaintiffs' indebtedness to defendant. However, defendants additionally secured the indebtedness with personalty in a separate and distinct transaction. Where the secured party has a security interest in both real and personal property he has the option of (1) proceeding against the personalty under the Code, or (2) proceeding against both the real and personal property under the law relating to real property. If he adopts the latter procedure then the Code is inapplicable even to the personalty. (Ill. Rev. Stat. 1971, ch. 26, par. 9—501(4).) American Oil chose upon plaintiffs' default to proceed under the Code by repossessing and selling the inventory, without judicial process. (Ill. Rev. Stat. 1971, ch. 26, pars. 9—503, 9—504(1).)[2] By this course of action, American Oil has been bound to any other applicable sections of the Code.

Additionally, we not that the Code's notice requirement for a secured party's sale of repossessed merchandise is substantially similar to language contained in the security agreement here in question.[3] Under a

---

[2] Ill. Rev. Stat. 1971, ch. 26, par. 9—503:
"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

Ill. Rev. Stat. 1971, ch. 26, par. 9—504(1):
"(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing."

[3] Ill. Rev. Stat. 1971, ch. 26, par. 9—504(3) provides:
"*  *  *  every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perish-

provision entitled "remedies" the security agreement provides:

"Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor at least 5 days' notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is intended."

It therefore appears that even if Article 9 of the Code was inapplicable it would nevertheless be a viable contention that American Oil was required to give notice of the sale of the repossessed inventory. Under either alternative, defendants are not entitled to summary judgment.

Plaintiffs next contend that their motion for summary judgment was improperly denied. Even if this were true the issue raised is not properly before this court since denial of a motion for summary judgment is not appealable. *In re Estate of Luther*, 3 Ill.App.3d 357, 277 N.E.2d 735.

Therefore, the judgment of the circuit court of Cook County granting defendants' motion for summary judgment is reversed and the appeal from denial of plaintiffs' motion for summary judgment is dismissed and the cause is remanded.

Reversed in part, dismissed in part, and remanded.

SULLIVAN, P. J., and ENGLISH, J., concur.

---

able or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, * * *."