John and Susan VAN BRUNT, Appellants,

v.

BANCTEXAS QUORUM, N.A. and Pat Greer, Appellees.

No. 05–87–01165–CV.

Court of Appeals of Texas, Dallas.

Aug. 15, 1989.

Opinion on Motion for Rehearing May 8, 1990.

Robert M. Nicoud, Harvey G. Joseph, Dallas, for John and Susan Van Brunt.

G. Roland Love, Cynthia Hollingsworth, Dallas, for BancTexas Quorum.

Before McCLUNG, BAKER and KINKEADE, JJ.

BAKER, Justice.

The two issues in this case are: (1) whether BancTexas Quorum, N.A. gave John and Susan Van Brunt sufficient notice of its intent to sell the Van Brunts' collateral pursuant to section 9.504(c) of the Uniform Commercial Code [1]; and (2) whether the Van Brunts' four-acre tract was entitled to a homestead exemption. The trial court concluded that BancTexas complied with section 9.504 of the Code and that the Van Brunts' four-acre tract was not a homestead. We reverse the trial court's judgment on its notice finding and render judgment that BancTexas is not entitled to sue the Van Brunts for a deficiency. We affirm the trial court on its judgment finding that the four-acre tract was not a homestead.

John Van Brunt was the president of a company known as Labels Unlimited, Inc. This company executed five promissory notes totaling an amount in excess of $840,-000 payable to BancTexas. To secure the debt, Labels Unlimited executed security agreements granting BancTexas a security interest in its equipment, inventory, and receivables. John Van Brunt executed an agreement personally guaranteeing all of the obligations of Labels Unlimited to BancTexas.

Labels Unlimited defaulted on the notes and declared bankruptcy. The bankruptcy court authorized the bankruptcy trustee to abandon the secured property to BancTexas. Subsequently, on January 6, 1987, BancTexas sent John Van Brunt notice of

---

**1.** All references to "the Code" and to section 9.504 are to the Texas Business and Commerce Code. *See* TEX.BUS. & COM.CODE ANN. § 9.504 (Tex.UCC) (Vernon Supp.1989).

its intent to sell the collateral. On January 29, 1987, BancTexas sent notice to both Labels Unlimited and John Van Brunt of its intent to conduct a public auction on February 18, 1987, in Lawrence, Kansas, the site of one of Labels Unlimited's plants. BancTexas held the public auction on that date, and John Van Brunt was there. At the auction BancTexas announced that it reserved the right to reject all bids. Shawnee Sales and Marketing submitted the highest bid of $40,000. However, BancTexas rejected this and all other bids. Subsequently, Causey Mason, the person BancTexas hired to organize the auction, telephoned numerous persons who had attended the auction, and other individuals, in an attempt to negotiate a higher sales price. Shawnee increased its bid to $55,000 and purchased the property. BancTexas did not notify John Van Brunt of its attempts to sell the property after the public auction.

On the homestead issue, the facts are that in 1981 the Van Brunts purchased a two-acre tract of land and subsequently built a home on it. In 1982, John Van Brunt purchased a contiguous four-acre tract, which is the property in dispute. The trial court found that John Van Brunt had previously listed the four-acre tract as a separate asset in his financial statements. Pat Greer, a vice president of BancTexas, testified that John Van Brunt told Greer that he was holding the property for investment purposes. The Van Brunts testified that they used the four acres for family recreation, mowed the tract two or three times a year, and occasionally threw grass seed on it. They also stated that the family dog had the full run of all six acres. While BancTexas and John Van Brunt were negotiating a business loan, BancTexas required John Van Brunt to pledge the four-acre tract as collateral. BancTexas requested a title company to prepare a deed of trust and title policy on the four-acre tract in connection with the loan; however, the title company refused because it determined that the four-acre tract was a part of the Van Brunts' homestead. BancTexas then prepared an affidavit of non-homestead as to the four-acre tract and a homestead designation as to the two-acre

tract. Both John and Susan Van Brunt executed this affidavit. BancTexas then completed and funded the loan.

The trial court rendered judgment that BancTexas recover from John Van Brunt the unpaid principal on the notes together with interest due through the date of judgment. The trial court also rendered judgment that the four-acre tract was not a homestead and denied injunctive relief to the Van Brunts.

In their first point of error, the Van Brunts contend that the trial court erred in holding that BancTexas complied with the notice requirements of section 9.504 of the Code. The Van Brunts argue that the notice of the public auction does not constitute notice of the subsequent private sale. The Van Brunts assert that because they received no notice of the private sale, BancTexas is not entitled to sue for a deficiency, and the trial court should have rendered judgment that BancTexas take nothing on the deficiency claims. *See Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 771 (Tex.1982); *Gentry v. Highlands State Bank*, 633 S.W.2d 590, 591 (Tex.App. —Houston [14th Dist.] 1982, writ ref'd). We agree and hold that BancTexas failed to give the Van Brunts sufficient notice.

The relevant portion of section 9.504 provides:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

§ 9.504(c). The purpose of requiring reasonable notification is to provide the debtor sufficient notice to enable him to protect his interest in the collateral. *See MBank Dallas v. Sunbelt Mfg., Inc.*, 710 S.W.2d 633, 636 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Such notification gives the debtor

the opportunity to pay the debt, find a buyer, or to attend the sale and bid on the property or have others do so, to the end that the property will not be sacrificed by a sale at less than its true value. *See Wright v. Interfirst Bank Tyler*, 746 S.W.2d 874, 877 (Tex.App.—Tyler 1988, no writ). Official comment 5 to section 9.504 states:

> "Reasonable notification" is not defined in this Article; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire.

§ 9.504 comment 5.

■ The letter that BancTexas sent John Van Brunt on January 6, 1987, notified him that BancTexas intended to sell all the collateral under the terms of its security agreement. The January 29, 1987 letter from BancTexas to John Van Brunt notified him that:

> [P]ursuant to the provisions of Section 9.504 of the Texas Uniform Code, Banc-Texas will hold a public auction of the Collateral which is located at the Labels plant in Lawrence, Kansas on February 18, 1987, at 12:00 p.m. The public auction will be held at the Labels plant located at 2201 Haskell, Lawrence, Kansas 60044.

John Van Brunt attended the public auction. When the auction started, Mason, the person BancTexas hired to evaluate and liquidate the collateral, announced that BancTexas reserved the right to reject all bids. At the end of the auction, BancTexas rejected all bids. Shawnee had submitted the highest bid of $40,000. Subsequently, without notice to John Van Brunt, Mason telephoned some of the persons who were at the public auction and a few other persons, and he eventually sold the collateral to Shawnee for $55,000.

The Van Brunts argue that BancTexas's reserving the right to reject all bids at the public auction did not constitute notice that BancTexas would sell the collateral privately if it rejected bids made at the public auction. The Van Brunts contend that the notice of the public auction does not constitute notice of a subsequent private sale. *See Wright*, 746 S.W.2d at 877; *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860, 862 (Mo.Ct.App.1978). The Van Brunts argue that, pursuant to section 9.504(c) of the Code, they were entitled to notice of a specific date after which Banc-Texas would proceed to otherwise dispose of the collateral. We agree.

In *Wright*, a creditor sent the debtor a notice that if he did not repay the note, the creditor would sell the collateral under the terms of the security agreement. The creditor later notified the debtor that the creditor intended to sell the collateral at a public auction, specifying the date and time. The creditor apparently never conducted a public auction and ended up selling the collateral at a private sale at a later date. The court held, as a matter of law, that notice of a public sale did not constitute "reasonable notification" of the subsequent private sale. The court noted that the purpose of the notice requirement was to enable the debtor to protect his interest in the collateral. *Wright*, 746 S.W.2d at 875, 877.

In *Gateway*, the creditor gave the debtor notice of a public auction, held the public auction, and rejected the highest bid of $130,000. Subsequently, the creditor sold the collateral at a private sale for $134,000. The creditor did not give the debtor notice of its intent to sell the collateral privately. In *Gateway*, the court reasoned that because the debtor could have taken measures to protect his interest in the collateral, the failure to give the debtor notice of the private sale was fatal to recovery for the deficiency. *Gateway*, 577 S.W.2d at 862.

In our view, these cases correctly state the law applicable to this case. Where a creditor intends to sell collateral privately, section 9.504(c) of the Code requires "reasonable notification of the time after which any private sale or other intended disposition is to be made...." *See* § 9.504(c). At a minimum, "reasonable notification" requires that persons entitled to notice have sufficient time "to take appropriate steps

to protect their interests by taking part in the sale or other disposition if they so desire." *See* § 9.504 comment 5. BancTexas's January 6, 1987 letter to John Van Brunt informed him that BancTexas intended to sell the collateral. This letter did not contain any notice of whether the sale would be public or private, nor did it contain any notice of an anticipated date of a sale. BancTexas's January 29, 1987 letter notified John Van Brunt that BancTexas intended to sell the collateral at a public auction, specifying the place, the date, and the time. BancTexas concedes that no further notice of any kind was given to the Van Brunts concerning the additional efforts to sell the collateral at a private sale following the public auction on February 18, 1987.

Based on the facts of this case, we hold that the Van Brunts did not have reasonable notice that BancTexas intended to sell the collateral privately. We cannot assume that the Van Brunts could not have taken action to protect their interests if they had been given notice of the private negotiations following the public auction. *See Gateway*, 577 S.W.2d at 862. BancTexas fails to persuade us by their argument that they should not be penalized for attempting to obtain a higher price for the collateral. We wish to make it clear that we do not disapprove such attempts to secure a higher price for the collateral; we only disapprove the *failure to notify the debtors*. Because it failed to give proper notice, BancTexas is not entitled to sue for a deficiency judgment against the Van Brunts. *Tanenbaum*, 628 S.W.2d at 772. We sustain the Van Brunts' first point of error. Because of our disposition of this point of error, we deem it unnecessary to consider the Van Brunts' points of error numbers two through five.

■ In their sixth point of error, the Van Brunts argue that the evidence is legally and factually insufficient to support the trial court's findings that the four-acre tract was not a homestead. An appellate court, in reviewing a legal insufficiency point, must consider only the evidence and the inferences tending to support the find-

ing and disregard all evidence and inferences to the contrary. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). On the other hand, when an appellate court considers a factual insufficiency assertion, all of the evidence in the record must be considered to decide the issue. *Garza*, 395 S.W.2d at 823. Only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust will the finding be set aside. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ The Van Brunts executed an affidavit that the four-acre tract was not their homestead. This fact alone provides some evidence to support the trial court's finding. The Van Brunts' no evidence argument is without merit.

■ To establish homestead rights, the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). The Van Brunts testified that they used the four acres for family recreation and enjoyment which included family picnics, family recreational games, and company picnics. They mowed the four-acre tract two or three times a year and occasionally threw grass seed on it. The family dog had the full run of all six acres. Pat Greer, BancTexas's vice president, said that John Van Brunt told him that Van Brunt was holding the property for investment purposes. The general rule is that the testimony of interested witnesses, such as the parties to the suit, merely raises a fact issue to be determined by the fact finder. *See Lifemark*, 655 S.W.2d at 315.

The two-acre and four-acre tracts were purchased separately. Both of the Van Brunts executed an affidavit that the four-acre tract was not a homestead. John Van Brunt had previously listed the four-acre tract as a separate asset in his financial statements. Based on this record, we cannot say that the trial court's finding that the four-acre tract was not a homestead is

manifestly wrong or unjust. We overrule the Van Brunts sixth point of error.

In their seventh point of error, the Van Brunts argue that the trial court erred in finding that they were estopped from asserting the homestead exemption because once property is impressed with homestead character, the representations of the owners that the property is not a homestead have no effect. They rely on *Braden Steel Corp. v. McClure*, 603 S.W.2d 288 (Tex.Civ. App.—Amarillo 1980, no writ) and *Blomgren v. Van Zandt*, 126 S.W.2d 506 (Tex. Civ.App.—Eastland 1939, no writ). Because the trial court found that the four-acre tract was not impressed with a homestead character, the estoppel finding is moot. *Braden Steel* and *Blomgren* do not apply to the facts of this case. We overrule the Van Brunts' seventh point of error.

In their eighth point of error, the Van Brunts contend that the trial court made fatally inconsistent and contradictory findings of fact and conclusions of law. They quote the portion of the judgment that provides:

IT IS FURTHER ORDERED, AD-JUDGED, AND DECREED, that the following property is not, at the date of the judgment, nor has it ever been, the homestead of JOHN VAN BRUNT AND SUSAN VAN BRUNT; but if the following property ever has been the homestead of those parties, they are estopped from so claiming. . . .

The Van Brunts also quote the corresponding finding of fact which contains similar language. The Van Brunts argue that, on the one hand, the trial court finds that the four-acre tract was never a homestead; however, on the other hand the court impliedly finds that the tract was a homestead and that the Van Brunts are estopped from so claiming. The Van Brunts argue that these two findings conflict and are therefore fatal to the judgment. *See Woodyard v. Hunt*, 695 S.W.2d 730, 732 (Tex.App.—Houston [1st Dist.] 1985, no writ).

Both the judgment and the finding of fact are worded in the alternative. Because we have held that the four-acre tract was never a homestead, we agree with the trial court's first finding. Because we agreed with this finding, we need not consider the second alternate finding. We disregard this finding, and the conflict, if any, is immaterial. *See Border State Life Ins. Co. v. Noble*, 138 S.W.2d 119, 123 (Tex.Civ. App.—El Paso 1940, writ dism'd judgmt cor.) We hold that there is no conflict between the finding of fact and the judgment rendered by the trial court. We overrule the Van Brunts' eighth point of error.

BancTexas has asserted one cross point, arguing that if this Court determines that the four-acre tract was a homestead, then the homestead was an urban homestead and not a rural homestead. Because we have not held that the four-acre tract is a homestead, we need not consider the merits of this cross point.

We reverse the trial court's judgment granting a deficiency in favor of BancTexas and render judgment that BancTexas take nothing from the Van Brunts on the BancTexas suit for deficiency. *See* TEX.R. APP.P. 81(c). We affirm the trial court's judgment that the four-acre tract was not a homestead.

Dissenting opinion by KINKEADE, J.

KINKEADE, Justice, dissenting.

The majority holds that the trial court erred in its finding on the issue of notice of sale from BancTexas to the Van Brunts. I respectfully dissent from that holding.

The majority correctly states the facts of the case and the key issue of whether the notice of public sale, followed by a private sale for more money than was bid at the public sale, was also sufficient notice of the private sale. I would hold that such notice was sufficient.

The relevant portion of section 9.504 provides:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale *or reasonable notification of the time after which any private sale* or other in-

tended disposition *is to be made* shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

TEX.BUS. & COM.CODE ANN. § 9.504(c) (Tex.UCC) (Vernon Supp.1989) (emphasis added).[1] The purpose of the Code's requirement of reasonable notification is to provide the debtor sufficient notice to enable him to protect his interest in the collateral, *MBank Dallas N.A. v. Sunbelt Manufacturing, Inc.*, 710 S.W.2d 633, 636 (Tex. App.—Dallas 1986, writ ref'd n.r.e.), "by paying the debt, finding a buyer or being present at the sale to bid on the property [at public auction] or have others do so, *to the end that it not be sacrificed by a sale at less than its true value." Wright v. Interfirst Bank Tyler, N.A.*, 746 S.W.2d 874, 877 (Tex.App.—Tyler 1988, no writ) (emphasis added). The official comment to section 9.504 states:

> "Reasonable notification" is not defined in this Article; at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire.

Tex.UCC § 9.504 comment 5.

By letter dated January 6, 1987, BancTexas informed John Van Brunt of the following: "This letter shall constitute formal notice to you that the real property, improvements, personal property and other collateral (the 'Property') covered by the applicable documentation securing the repayment of the Indebtedness will be sold in accordance with the terms of the applicable security documentation." By letter dated January 29, 1987, BancTexas informed John Van Brunt:

> [P]ursuant to the provisions of Section 9.504 of the Texas Uniform Code, BancTexas will hold a public auction of the Collateral which is located at the Labels plant in Lawrence, Kansas on February 18, 1987, at 12:00 p.m. The public auction will be held at the Labels plant locat-

ed at 2201 Haskell, Lawrence, Kansas 60044.

John Van Brunt attended the public auction. At the commencement of the sale, Mason, the person BancTexas hired to evaluate and liquidate the secured collateral, orally notified all those present at the auction that BancTexas reserved the right to reject all bids. After the auction concluded, BancTexas rejected all bids. Shawnee submitted the highest bid of $40,000. Subsequently, without notifying John Van Brunt, Mason telephoned some of the individuals who had attended the auction and a few other persons. Mason eventually sold the collateral to Shawnee for $55,000.

The majority holds that BancTexas's action in reserving the right to reject all bids at the public auction did not constitute notice that BancTexas would sell the collateral privately if it rejected all the bids at the public auction. The majority holds that the notice of the public auction does not constitute notice of a subsequent private sale. *See Wright*, 746 S.W.2d at 877; *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860, 862–63 (Mo.Ct.App. 1978). The Court holds that the Van Brunts were entitled to notice of a specific date after which BancTexas would proceed to otherwise dispose of the collateral. *See* Tex.UCC § 9.504(c). For the reasons given below, I disagree.

The majority relies on *Wright v. Interfirst Bank Tyler, N.A.* to support its holding. In *Wright*, on March 23, 1984, the bank wrote the debtor that if he did not repay his note, the bank would sell the collateral according to the terms of the security agreement. *Wright*, 746 S.W.2d at 875 n. 3. On April 2, 1984, the bank wrote the debtor that the bank intended to sell the collateral at a public auction to be held on April 13, 1984. The bank apparently never conducted a public auction and ended up selling the collateral privately on May 24, 1984. The court held that notice of a public sale did not constitute "reasonable notification" of the subsequent private sale as a matter of law. *Wright*, 746

---

1. All textual references to "the Code" are to the Texas Uniform Commercial Code; all citations to "Tex.UCC" are to the Texas Uniform Commercial Code.

S.W.2d at 877. The court noted that the purpose of the notice requirement was to enable the debtor to protect his interest in the collateral.

The majority also relies on *Gateway Aviation Inc. v. Cessna Aircraft Co.*. In *Gateway*, the creditor gave the debtor notice of a public auction, held the public auction, rejected the highest bid of $130,-000, and subsequently sold the collateral for $134,000. The creditor did not give the debtor a notice of its intent to sell the collateral privately. *Gateway*, 577 S.W.2d at 861. The court reasoned that because the debtor could have taken measures to protect his interest in the collateral, the failure to give the debtor notice of the private sale was fatal. *Gateway*, 577 S.W.2d at 862.

I am not persuaded by these cases. Where a creditor intends to sell collateral privately, section 9.504 of the Code requires "reasonable notification of the time after which any private sale or other intended disposition is to be made. . . ." Tex.UCC § 9.504(c). At a minimum, "reasonable notification" requires the persons with interests in the collateral to have sufficient time "to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire." Tex.UCC § 9.504 comment 5. BancTexas's January 6, 1987, letter to John Van Brunt informed him that BancTexas intended to sell the collateral. Failure of a notice to state whether the creditor intends to sell the collateral privately or at public auction is not fatal to the notice for purposes of section 9.504(c). *Hall v. Crocker Equipment Leasing, Inc.*, 737 S.W.2d 1, 3 (Tex. App.—Houston [14th Dist.] 1987, writ denied). Accordingly, the only element arguably missing from the January 6, 1987, letter is the time after which BancTexas intended to make a private sale.

BancTexas's January 29, 1987, letter informed John Van Brunt that BancTexas intended to sell the collateral on February 18, 1987, at a public auction. Considering both the January 6 and January 29 letters together, I would hold that the Van Brunts had reasonable notification that they had until February 18, 1987, to take whatever steps they could to protect their interest in the collateral. The fact that BancTexas did not sell the collateral on February 18, 1987, did not deprive the Van Brunts of an opportunity to protect their interest in the collateral; to the contrary, BancTexas's refusal to accept the $40,000 high bid provided the Van Brunts additional time to pursue other avenues.

On the basis of the facts of this case, I would hold that when BancTexas rejected all the bids at the auction, the Van Brunts had reasonable notice that BancTexas intended to sell the collateral privately. I note that section 9.504 of the Code does not require the creditor to notify the debtor of whatever attempts the creditor is making to sell the collateral; rather, section 9.504 merely requires the creditor to inform the debtor that, as of a certain date, the creditor will attempt to sell the collateral privately. Once the creditor informs the debtor that the creditor intends to sell the collateral as of a certain date, the creditor has fulfilled its burden. From that point, the Code leaves the debtor to fend for himself on how best to protect his interests.

In this case, John Van Brunt was present at the public auction and witnessed BancTexas's efforts to prevent the property from selling at less than its full value. Acting in the interest of John Van Brunt, BancTexas negotiated a price that was $15,000 higher than the highest auction bid. BancTexas' actions saved John Van Brunt that amount of loss. It is interesting to note that, based on the record in this case, BancTexas would have been better off taking the $40,000 bid at the public auction because BancTexas then would not have lost its right to pursue the Van Brunts for the deficiency, which in this case amounts to approximately $637,000. On the facts of this case, I would hold that the Van Brunts had notice that BancTexas intended to sell the collateral on February 18, 1987, or thereafter, either publicly or privately, and that the Van Brunts had until February 18, 1987, to act on that notice. I would overrule the Van Brunts' first point of error. Based on this holding, I would rule on

points of error numbers two through five as follows:

In point of error two, the Van Brunts contend that BancTexas's purported notice did not give them sufficient time to protect their interests. The Van Brunts argue that even if the rejection of all bids at the public auction constituted notice that BancTexas intended to sell the collateral privately, thereafter they had no time to take any steps to protect their interest in the collateral. I disagree. As of February 18, 1987, the Van Brunts had notice for approximately one month, by virtue of the January 6, 1987, letter, that BancTexas intended to sell the collateral. The January 29, 1987, letter told the Van Brunts that they had until February 18, 1987, to protect their interests. The Van Brunts do not argue that these periods were insufficient or unreasonable. I would overrule the Van Brunts' point of error number two.

In point of error three, the Van Brunts contend that a notice under section 9.504 must be written and not oral. This Court has previously held that a notice under section 9.504 may be oral. *MBank Dallas, N.A. v. Sunbelt Mfg., Inc.*, 710 S.W.2d 633, 635–36 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). I would overrule point of error number three.

In point of error four, the Van Brunts argue that because the notice was not given by a secured party, it failed to comply with section 9.504. The Van Brunts focus their argument on Mason's oral statement that BancTexas reserved the right to reject all bids at the auction. The Van Brunts maintain that there is no evidence that Mason was BancTexas's agent for purposes of giving the Van Brunts notice. I disagree. BancTexas hired Mason to perform the February 18, 1987, public auction. Mason performed the auction on behalf of BancTexas. I would hold that Mason had the authority to give the Van Brunts notice. I would overrule point of error four.

In point of error five, the Van Brunts argue that the sale of the collateral was not commercially reasonable; therefore, BancTexas is not entitled to a deficiency judgment. The Van Brunts argue that where a party does not receive notice, the creditor may not recover the deficiency. *Tanenbaum v. Economics Laboratory, Inc.*, 628 S.W.2d 769, 772 (Tex.1982); *Gentry v. Highlands State Bank*, 633 S.W.2d 590, 591 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd). The Van Brunts are correct in asserting that where a debtor does not receive notice of the sale of his property, the creditor may not recover any deficiency from the debtor. However, I would hold that the Van Brunts had sufficient notice; therefore, those authorities would not apply. I would overrule point of error five.

I concur in the remainder of the majority opinion, and I would affirm the judgment of the trial court.

Before the court en banc.

## OPINION ON MOTION FOR REHEARING

KINKEADE, Justice.

We withdraw that portion of this Court's opinion entered on August 15, 1989, to the extent that this Court held that BancTexas Quorum, N.A., could not seek a deficiency judgment on the March 29, 1985 promissory note. The following is now the opinion of this Court only with regard to that note.

All parties to this appeal have filed motions for rehearing. In its motion for rehearing, BancTexas contends that this Court erred in its opinion and judgment by holding that BancTexas's failure to provide adequate notice pursuant to the Texas Business and Commerce Code precludes it from seeking a deficiency judgment against the Van Brunts for the unpaid balance of one of the five promissory notes executed by Labels Unlimited. Specifically, BancTexas contends that Labels Unlimited's personal property, sold by BancTexas in February 1987, did not secure the $200,000 note executed by Labels Unlimited on March 29, 1985, and guaranteed by the Van Brunts. The trial court found that the unpaid principal balance of this note was $145,549.50, and the unpaid accrued interest was $8,837.81. BancTexas contends that all parties concede, and the record

confirms, these facts. We disagree with BancTexas's contention that personal property did not secure the $200,000 note. In a case of first impression in Texas, we find that, as both real and personal property secured the note, BancTexas had the option under section 9.501(d) of the Texas Business & Commerce Code [1] to proceed under that Code as to the personal property, and later proceed under the Texas Property Code as to the real property, without being adversely affected by any defects in its personal property foreclosure proceedings. *See* Tex.Prop.Code Ann. § 51.002 (Vernon 1984).

■ When executed in March 1985, the $200,000 note listed as security a deed of trust on the four-acre tract located in Collin County, the same property involved in the homestead dispute. When BancTexas notified the Van Brunts of its intention to sell Labels Unlimited's collateral under the terms of its security agreements, BancTexas included the $200,000 note as one of the notes in the notice. BancTexas also stated in that notice that it intended to conduct the sale pursuant to its rights under those security agreements, including one dated November 30, 1985. That security agreement, executed subsequent to the $200,000 note, provided that the security interest created, secured "all obligations and indebtedness owed to [BancTexas] direct or indirect, now existing or hereafter arising." Paragraph two of that security agreement described as security all of Labels Unlimited's personal property. Accordingly, the record reflects that both real and personal property secured the $200,000 note.

■ The Code defines a "security interest" as an interest in personal property or fixtures, and "collateral" as property subject to a security interest. *See* §§ 1.201(37), 9.105(a)(3). By its very terms, the Code's provisions setting forth procedures regarding "collateral" or "security interests" apply solely to personal property. The Code does not apply to the cre-

ation or transfer of an interest in or lien on real estate:

§ 9.104 Transactions Excluded From Chapter

This chapter does not apply

. . . .

(10) except to the extent that provision is made for fixtures ..., to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder.

§ 9.104(10).

Section 9.501(d) states:

§ 9.501 Default; Procedure When Security Agreement Covers Both Real and Personal Property

. . . .

(d) If the security agreement covers both real and personal property, the secured party may proceed under this subchapter [the subchapter entitled "Default"] as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this subchapter do not apply.

§ 9.501(d).

Comment 5 to section 9.501 states:

5. The collateral for many corporate security issues consists of both real and personal property. In the interest of simplicity and speed subsection [d] permits, although it does not require, the secured party to proceed as to both real and personal property in accordance with his rights and remedies in respect of the real property. Except for the permission so granted, this Act leaves to other state law all questions of procedure with respect to real property. For example, this Act does not determine whether the secured party can proceed against the real estate alone and later proceed in a separate action against the personal property in accordance with his rights and remedies against the real estate. By such separate actions the secured party "proceeds as to both," and this Part does not

---

1. Unless otherwise stated, all section and code references are to the Texas Business and Commerce Code. *See* Tex.Bus. & Com.Code Ann.

§§ 1.106, 1.201, 9.104, 9.105, 9.501, 9.504, 9.505 (Tex.UCC) (Vernon 1989).

apply in either action. But subsection [d] does give him an option to proceed under this Part as to the personal property. § 9.501, comment 5.

■ Under section 9.501(d), if the security agreement covers both real and personal property, the secured party may proceed as to both in accordance with his rights and remedies in respect of the real property. The Code default rules then become inapplicable. Alternatively, the secured party may proceed under the Code as to the personal property. 1A Coogan, Hogan, and Vagts, Bender's UCC Service (MB) § 8.07[5] (1984). Comment 5 to section 9.501(d) states that separate actions may be considered proceeding "as to both" real and personal property. Section 9.501(d) provides an *option* to proceed separately under the Code *as to the personal property.* See § 9.501(d), comment 5. Section 9.501(d) and comment 5 exclude any mention of proceeding under the Code as to the real property.

Several courts in other jurisdictions that have enacted the Uniform Commercial Code have construed provisions with language identical to section 9.501(d) and comment 5. The Illinois Supreme Court held that the language of section 9.501(d) and its comment indicate that when both real and personal property secure a debt, secured creditors have the option upon the debtor's default to proceed against both the real and personal property collateral in separate actions, whether concurrently or successively. If the secured creditor chooses to proceed in separate actions, the default provisions of the Uniform Commercial Code apply only with regard to the personal property. *Kramer v. Exchange National Bank of Chicago,* 118 Ill.2d 277, 113 Ill.Dec. 248, 252, 515 N.E.2d 57, 61 (1987); *see also Brenton State Bank of Jefferson v. Tiffany,* 440 N.W.2d 583, 587 (Iowa 1989); *State Bank v. Hansen,* 302 N.W.2d 760, 764 (N.D.1981); *Bank of Spring Valley v. Wolske,* 144 Wis.2d 762, 424 N.W.2d 744, 747 (App.1988).

■ Through the enactment of section 9.501, the drafters of the Uniform Commercial Code intended to broaden the options available to a secured creditor upon a debtor's default. *Kramer,* 113 Ill.Dec. at 252, 515 N.E.2d at 61. Courts must interpret section 9.501(d) in light of the overall policy of the Uniform Commercial Code to expand creditors' remedies with respect to personal property collateral. Courts cannot interpret the section to reduce the rights of secured creditors with respect to personal property in cases where both real property and personal property secure a debt. *Wiley v. Bank of Fountain Valley,* 632 P.2d 282, 285 (Colo.App.1981). The creditor may choose either to proceed as to both the real and personal property in accordance with real property law in one action or in separate actions. *See* § 9.501(d), comment 5. The creditor may also opt to proceed against the personal property under the Code, but has no option to proceed as to the real property under the Code. *See* §§ 1.201(37), 9.105(a)(3), 9.104(10), 9.501(d).

Under the reasoning of the dissent to this opinion on motion for rehearing, BancTexas can foreclose on its real and personal property liens but cannot seek a deficiency in either proceeding. In its original opinion, the majority holds that BancTexas's failure to provide adequate notice precludes it from seeking a deficiency judgment against the Van Brunts, citing *Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769 (Tex.1982). However, the *Tanenbaum* Court found that the legislature, in enacting two sections of the Code governing disposition of collateral, intended to put the creditor to an election either to sell the repossessed collateral pursuant to section 9.504 or to retain the collateral in complete satisfaction of the debt pursuant to section 9.505. The Court held that, because the creditor had not complied with the notice provisions of section 9.504, it, in effect, had elected to retain the collateral in complete satisfaction of the debt. *Tanenbaum,* 628 S.W.2d at 771. If, as alleged by the dissent to this opinion, failure to give adequate notice precludes BancTexas from seeking a deficiency as to both the real and personal property, it also precludes BancTexas from foreclosing on its real property

lien because the sale of the personal property would have satisfied all indebtedness. *See, e.g., Hildner v. Fox,* 17 Ill.App.3d 97, 308 N.E.2d 301, 303 (1974). The *Hildner* court suggested that a secured creditor's failure to comply with the Code and notify the debtor of a foreclosure on personal property requires cancellation of a real estate mortgage taken as additional security. However, the Illinois Supreme Court implicitly rejected the *Hildner* court's suggestion when it concluded that section 9.501(d) gives a secured creditor the option to proceed against both the real and personal property collateral in separate actions. *Kramer,* 113 Ill.Dec. at 252, 515 N.E.2d at 61. Further, according to one commentator who expressly disapproved the *Hildner* court's comment, the language of section 9.501(d) "would seem to cut the other way, driving a wedge between any defect in the Code foreclosure and rights under a real estate mortgage." CLARK, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE § 4.03(4), n. 159 (2d ed. 1988).

The dissent stops short of the *Hildner* court's suggestion that a secured creditor's failure to comply with the Code when foreclosing on personal property requires cancellation of a real estate mortgage taken as additional security. The dissent simply treats the real property collateral as additional personal property collateral, and then applies the *Tanenbaum* rule to preclude BancTexas from seeking a deficiency in either proceeding.

■ Application of a rule must advance the policy that gives rise to the rule in the first instance. This concept is fundamental to our system of jurisprudence, as well as to a proper application of the Uniform Commercial Code. *Barclays Bank D.C.O. v. Mercantile National Bank,* 481 F.2d 1224, 1230 (5th Cir.1973). The Code does not provide for the elimination of a deficiency because of a secured creditor's failure to comply with its default provisions. Rather, the Code provides that a secured creditor may hold a debtor liable for a deficiency. § 9.504(b). Because the secured creditor's loss of its right to seek a deficiency is judicially imposed, we must closely examine the *Tanenbaum* Court's rationale for eliminating that right. *See Barclays Bank D.C.O.,* 481 F.2d at 1230. In *Tanenbaum,* a creditor with a security interest only in personal property sought to hold a debtor liable for a deficiency after seizing and destroying that collateral. The *Tanenbaum* Court, in seeking to prevent a secured creditor's abuse, found that the creditor's failure to give proper notice to the debtor when disposing of the collateral under section 9.504 of the Code resulted in an election to retain the collateral in full satisfaction of the debt, an option available under section 9.505 when a secured party takes possession of the debtor's personal property after default. The election is triggered by an irrebuttable presumption that the creditor has proceeded under section 9.505 rather than under section 9.504. The result comports with section 1.106 of the Code, which provides that the remedies provided under the Code "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." When the debt is also collateralized by real property, however, as to which section 9.505 is inapplicable, the basis for the irrebuttable presumption addressed in *Tanenbaum* is absent. Application of the *Tanenbaum* rule under these differing circumstances is not warranted because of the additional penalty damages which the secured creditor thereby suffers with respect to the real property interest. The Code prohibits interpretation of its provisions to impose penalty damages. *See* § 1.106.

The Van Brunts agreed to provide both real and personal property to secure the $200,000 note, and to provide only personal property to secure the other four promissory notes. In its original opinion, the majority applied the *Tanenbaum* rule to preclude BancTexas from seeking a deficiency in the personal property foreclosure proceedings, thus providing the Van Brunts with the benefit of the rule. If, as the dissent to this opinion contends, the *Tanenbaum* rule applies to the real property foreclosure proceedings, the dissent must conclude, as the *Hildner* court did, that Banc-

Texas's foreclosure on the personal property satisfied the debt, eliminating any deficiency and requiring cancellation of the real estate mortgage. The only other rationale available to the dissent is to treat the real property as personal property, a remedy prohibited by the terms of the Code, which excludes real property as collateral. *See* §§ 1.201(37), 9.105(a)(3). We hold that any defect in BancTexas's foreclosure under the Code has no effect on its rights under the real property mortgage, including its right to seek a deficiency.

We vacate this Court's August 15, 1989 judgment to the extent that it precluded BancTexas from seeking a deficiency judgment on the March 29, 1985 promissory note. We affirm the portion of the trial court's judgment awarding BancTexas a deficiency judgment on the March 29, 1985 promissory note in the amount of $145,549.50, together with accrued interest in the amount of $8,837.81. We reverse the portion of the trial court's judgment awarding BancTexas a deficiency judgment for principal or interest amounts due under the other four promissory notes and render judgment that BancTexas take nothing on those four notes. In all other respects, we affirm the trial court's judgment.

BAKER, Justice, dissenting.

In the beginning, the majority finds that as both real and personal property secured the $200,000 Van Brunt note, BancTexas had the option under section 9.501(d) of the Texas Business and Commerce Code [1] to proceed separately as to the personal property and later proceed under the Texas Property Code as to the real property securing the Van Brunt indebtedness. In the end, the majority holds that any defect in BancTexas's foreclosure under the Code has no effect on its rights under the real estate mortgage, including its right to seek a deficiency under real property law. In my view, the majority lost its way between the beginning and end. Consequently, I respectfully dissent.

Section 9.501(d) provides that if the security agreement covers both real and personal property, the secured party may proceed as to both in accordance with his rights and remedies in respect to the real property or the secured party may proceed under the Code as to the personal property. If the secured party proceeds as to both real and personal property in accordance with his rights and remedies in respect to the real property, then the Code default rules do not apply. The majority concludes, in accordance with the holdings of other jurisdictions, that when both real and personal properties secure a debt, section 9.501(d) gives secured creditors the option, upon a debtor's default, to proceed against both the real and personal property collateral in separate actions, whether concurrently or successively. *E.g., Kramer v. Exchange Nat'l Bank of Chicago*, 118 Ill. 2d 277, 113 Ill.Dec. 248, 252, 515 N.E.2d 57, 61 (1987).

However, the flaw in the majority's analysis is that the majority wholly and consistently ignores the statutory requirement that the secured party must proceed as to *both* the real and personal property *in accordance with its rights and remedies under real property law* if the secured party wishes to avoid application of the Code default provisions as to the personal property. *See* § 9.501(d). The comment, also relied upon by the majority, makes this clear by suggesting that the secured party can proceed against the real property in one action and "in a separate action against the personal property in accordance with his rights and remedies against the real estate." *See* § 9.501(d), comment 5.

The record reflects that when the Van Brunts executed the $200,000 note, BancTexas chose to secure it only with a deed of trust against the four-acre tract of land in Collin County. Subsequently, in November 1985, BancTexas chose to cross-collateralize the $200,000 note with a personal property security interest in all of the assets of

---

**1.** All section and Code references are to the Texas Business and Commerce Code Annotated

(Vernon Supp.1990).

Labels Unlimited. When BancTexas gave notice to the Van Brunts of its intention to sell Labels Unlimited's collateral under the security agreement, BancTexas chose to include the $200,000 note as one of the debts involved in the foreclosure proceeding. BancTexas chose to withdraw the collateral from the public sale previously noticed and proceed with a private sale without further notice to the Van Brunts. The record clearly reflects that BancTexas chose to proceed as to the personal property and all of the indebtedness in accordance with the Code provisions concerning default. There is no indication in the record that BancTexas attempted to sell the personal property in a manner consistent with a trustee's sale of real property. In other words, BancTexas clearly did not do what it needed to do in order to avoid application of the Code provisions.

We held in the original opinion that because BancTexas failed to give proper notice of the private sale of the personal property, it could not seek a deficiency for the unpaid balances. *See Tanenbaum v. Economics Laboratory, Inc.,* 628 S.W.2d 769, 772 (Tex.1982). If the protection provided to debtors by *Tanenbaum* is to be meaningful in cases where a debt is secured by both personal and real property and where the secured party has not taken the necessary action to avoid application of the Code provisions on default, the *Tanenbaum* principles must apply to prohibit a creditor from seeking a deficiency judgment after the sale of the real property. The majority's holding eviscerates the *Tanenbaum* holding in any case where a debt is secured by both real and personal property, regardless of whether the secured creditor acted properly to opt out of the Code provisions regarding default. In cases where a creditor fails to comply with the applicable notice requirements of section 9.504, the majority effectively holds that *Tanenbaum's* prohibition against suing for a deficiency is really not a prohibition if the debt was also secured by real property, despite the fact that the creditor has not complied with the provisions of

section 9.501(d) allowing avoidance of the Code default provisions as to the personal property.

Contrary to the majority's assertion, I do not read *Hildner* [2] to suggest that the failure to notify a debtor of a foreclosure on personal property under the Code requires cancellation of a real estate mortgage taken as additional security. What I do read *Hildner* to say is that if a secured creditor chooses, as BancTexas did here, to proceed under the Code as to the entire indebtedness, including debt cross-collateralized by real property, by repossessing and selling the personal property, such course of action binds that creditor to any other applicable sections of the Code. *See Hildner,* 308 N.E.2d at 303.

The majority contends that the dissent's position leads to the conclusion that BancTexas is precluded from foreclosing on its real property lien because the sale of the personal property would have *satisfied* all indebtedness. In my view, the fact that *Tanenbaum* prevents BancTexas from seeking a deficiency due to its failure to give adequate notice does not mean that BancTexas is precluded from foreclosing on its real property lien. The proceeds of the sale of the personal property did not satisfy all of the Van Brunt indebtedness. The unsatisfied balance remained as a deficiency, but because BancTexas failed to give adequate notice, *Tanenbaum* precludes it from asserting a cause of action for that unsatisfied deficiency. Foreclosing on the real property is not the seeking of a deficiency, so such action is not barred by *Tanenbaum.*

The *Hildner* rationale does not require the conclusion that the real estate mortgage is canceled, nor does it require the conclusion that the secured creditor is precluded from posting the real property and foreclosing under its deed of trust; it only compels the conclusion that after these actions are taken BancTexas is precluded from taking any action against the Van Brunts for any remaining deficiency on the note. This result is consistent with *Tanenbaum.* The majority's suggestion to the

---

2. *Hildner v. Fox,* 17 Ill.App.3d 97, 308 N.E.2d 301 (1974).

contrary is based upon their erroneous construction of *Tanenbaum*. Under the particular facts in *Tanenbaum*, the Supreme Court held that when the creditor took possession of the collateral and scrapped it without giving notice of such disposition to the debtor, the creditor was deemed to have elected to retain the collateral in full satisfaction of the indebtedness under section 9.505 of the Code. *See Tanenbaum*, 628 S.W.2d at 772; § 9.505(b). Such is not the situation in the case before us. Banc-Texas did not destroy the collateral. Banc-Texas sold it by private sale without proper notice to the Van Brunts. Therefore, there is no basis for concluding that BancTexas effectively elected to retain the collateral in full satisfaction of the indebtedness in accordance with section 9.505.

BancTexas could have chosen to proceed against all of its collateral in accordance with its rights and remedies with respect to real property, or BancTexas could have chosen to proceed against the personal property collateral in a separate action under the Code provisions and against the real property collateral under the Texas Property Code provisions. In my view, because of the course of action that BancTexas chose to take, I would hold that although the defect in BancTexas's foreclosure under the Code does not affect its right to post and foreclose the real property and sell it under its deed of trust lien, BancTexas is precluded from seeking a deficiency of any balance remaining subsequent to such foreclosure.

I respectfully dissent.