clancy 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-93-00561-CV








Pat Clancy, Appellant



v.



OmniBank of Mantee, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH DISTRICT COURT


NO. 92-11078, HONORABLE JERRY DELLANA, JUDGE PRESIDING







 Appellant Pat Clancy sought a declaratory judgment that property owned by him
was his homestead and that liens on the property held by Appellee OmniBank as security on two
loans were invalid. After a bench trial, the trial court concluded as a matter of law that the
property was not Clancy's homestead in 1987 at the time of the loan transaction with Omnibank
and that the liens were therefore valid. Clancy appeals, alleging the trial court erred in failing to
find that the property was Clancy's homestead as a matter of law. We will affirm the trial court's
judgment.


 

BACKGROUND


 On March 5, 1981, Clancy purchased 73.9 acres of real property in Spicewood,
Texas ("the Spicewood property"). On October 13, 1987, Clancy borrowed $650,000 from
OmniBank and as security signed a deed of trust that created a lien on the Spicewood property. 
On July 25, 1989, Clancy entered into another loan transaction with OmniBank for $200,000. 
A deed of trust on the Spicewood property secured this loan as well.

 Clancy defaulted on both loans and entered into an agreement with OmniBank on
November 22, 1992 to resolve the debts. Clancy subsequently defaulted on this agreement and
on both loans for a second time. Clancy is currently in default and has made no unconditional
offer to pay the outstanding debt to OmniBank.

 On July 31, 1992, Clancy filed suit against OmniBank seeking a declaratory
judgment that the Spicewood property was Clancy's rural homestead and that the deed of trust and
the liens OmniBank held were invalid. (1) After a bench trial, the trial court concluded as a matter
of law that the Spicewood property was not Clancy's homestead in 1987 at the time of the first
loan transaction with OmniBank, and that the liens on the Spicewood property are valid. Clancy
raises three points of error on appeal, contending that the trial court erred: (1) in not finding that
the Spicewood property was his homestead as a matter of law, thereby invalidating OmniBank's
liens; (2) in finding that he was estopped from claiming the Spicewood property as his homestead;
and (3) in finding that he had abandoned the Spicewood property as his homestead. (2) OmniBank
raises a cross-point of error that the trial court erred in allowing the testimony of three of Clancy's
witnesses who were not fully identified in answers to OmniBank's interrogatories.



DISCUSSION


 In his first point of error, Clancy complains that the trial court erred by failing to
find as a matter of law that the Spicewood property was his homestead. To establish homestead
rights, the claimant must show a combination of both overt acts of homestead usage and the
intention on the part of the owner to claim the land as a homestead. Van Brunt v. BancTexas
Quorum, N.A., 804 S.W.2d 117, 122 (Tex. App.--Dallas 1989, no writ); Lifemark Corp. v.
Merritt, 655 S.W.2d 310, 314 (Tex. App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.). Proof
of a homestead must establish use of the property for some purpose as a home. Clark v. Salinas,
626 S.W.2d 118, 120 (Tex. App.--Corpus Christi 1981), writ ref'd n.r.e. per curiam, 628 S.W.2d
51 (Tex. 1982). Whether property constitutes a homestead also depends to some extent upon the
intention of the owner; the best evidence of intention is actual occupancy and use. Ray v.
Metzger, 165 S.W.2d 207, 210 (Tex. Civ. App.--Fort Worth 1942), aff'd, 172 S.W.2d 480 (Tex.
1943). In the absence of actual occupancy, the owner must intend to reside on the property as a
home, and his intent must be evidenced by overt acts of preparation that impress the land with the
incidents of a home. Cheswick v. Freeman, 287 S.W.2d 171,173 (Tex. 1956). Evidence
indicating only an intention to make the property one's homestead at some indefinite time in the
future, without ever having lived on the property, has been held insufficient to establish a
homestead. Von Hutchins v. Pope, 351 S.W.2d 642, 645-46 (Tex. Civ. App.--Houston 1961, writ
ref'd n.r.e.).

 By contending that the trial court erred in not finding the Spicewood property to
be his homestead, Clancy challenges the trial court's finding to the contrary. In examining
whether Clancy can overcome an adverse finding, as a matter of law, we undertake a two-part
inquiry. First, we must examine the record for evidence that supports the court's adverse
findings, while ignoring all evidence to the contrary. If there is no evidence to support the trial
court's finding, then as a second inquiry, we must examine the entire record to determine if the
contrary proposition is established conclusively, as a matter of law. Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982).

 When Clancy purchased the Spicewood property in March 1981, he lived in
Jackson, Mississippi, where he was employed by Bay Springs Bank. At that time, the Spicewood
property was unimproved land with no structure suitable for living on the property. Clancy then
moved to Austin, Texas in August 1981 where he lived in a townhouse with his future wife,
Deborah Bell, for approximately seven months. During this time, Clancy received
correspondence at the townhouse. In March 1982, Clancy returned to Mississippi to work at
Mississippi Bank. He lived in an apartment complex in Jackson. In April 1982, after moving
back to Mississippi, Clancy purchased a trailer house and placed it on the Spicewood property. (3) 
In August 1982, he began receiving electricity service and water at the Spicewood property; no
phone service was received before 1989.

 In May 1983, Clancy married Bell, who moved to Jackson to live with him. 
Shortly thereafter, Clancy assumed a homestead lease on a thirty-six acre tract of land with a
house ("the Jackson property"). He and his wife began occupying the Jackson property in late
1983 and undertook substantial improvements to their house in Jackson.

 From 1984 to 1987, Clancy entered into a series of loan transactions with banks
in Mississippi, using a portion of the proceeds from each loan to pay off a prior loan. All of these
transactions were secured by a deed of trust that created a lien on the Spicewood property.

 In April 1987, Clancy and his wife separated, and she moved from the Jackson
property. Deborah Clancy filed for divorce in Travis County, Texas. Clancy filed for divorce
in Madison County, Mississippi, claiming that he was a resident of Mississppi. He also filed a
"special appearance" to challenge jurisdiction in Travis County. In the special appearance, he
testified that he was not a resident of Texas and that the last state of marital residence of the
couple was Mississippi. The special appearance was overruled, and the divorce became final in
Texas in September 1987. The divorce decree listed the Jackson property as Clancy's residence. 
After the divorce, Clancy continued to reside at the Jackson property until December 1991 or
January 1992. During this period, he received mail at the Jackson property and used the address
on his personal checks.

 In October 1987, Clancy borrowed $650,000 from OmniBank, securing the loan
with a deed of trust on the Spicewood property. In July 1989, he borrowed $200,000 from
OmniBank, again using the Spicewood property as security for the loan. On December 16, 1991,
Clancy declared for the first time that the Spicewood property was his homestead. He filed this
suit for a declaratory judgment on July 31, 1992.

 Several documents are relevant to our inquiry. From 1981 through 1988, Clancy
filed U.S. income tax returns which listed his Mississippi address as his place of residence. 
Clancy's 1989 federal tax return listed the Spicewood address as his residence, but that return was
not signed until June 1, 1992 after he declared the Spicewood property to be his homestead. 
Clancy also filed Mississippi state income tax returns from 1983 through 1988. He did not file
non-resident state income tax returns in Mississippi. Clancy's financial statements, which were
provided to lenders from 1980 through 1990, listed Mississippi as his state of residence. 

 The closing documents for the 1987 loan from OmniBank listed the Jackson
property as Clancy's residence. The promissory note for the 1989 loan from OmniBank stated
that the Spicewood property was used for "business purposes." (4) As a part of the 1989 loan
transaction, Clancy signed a sworn Homestead Affidavit and Designation of Homestead. This
document stated that Clancy did not reside on the Spicewood property or claim it as a business
or residence homestead at that time, and that he disclaimed any homestead right in the property. 

 The foregoing evidence is sufficient to support the finding of the trial court. From
1981, when he purchased the Spicewood property, until 1991, after both of the OmniBank loans
were negotiated, Clancy lived in Texas for only seven months. During those months, he resided
in Austin at a townhouse, not at the Spicewood property. There was no dwelling suitable for
living on the property until 1982, after Clancy had returned to Jackson. During the relevant
period, Clancy neither occupied the Spicewood property nor overtly used it as his homestead. See
Van Brunt, 804 S.W.2d at 122.

 Clancy failed to demonstrate an intent to make the Spicewood property his
homestead. His sworn testimony in the 1987 divorce proceeding establishes his intent to be
recognized as a Mississippi resident. Clancy also indicated on numerous records that he was a
Mississippi resident, not a resident of Texas.

 Because the record contains sufficient evidence to support the finding of the trial
court that the Spicewood property was not Clancy's homestead, we need not address the second
prong of the Sterner inquiry. Sterner, 767 S.W.2d at 690. We overrule Clancy's first point of
error.



CONCLUSION


 Having concluded that the trial court did not err in finding that the Spicewood
property was not Clancy's homestead, we uphold the trial court's judgment that the OmniBank
liens are valid and enforceable. We need not address OmniBank's cross-point of error concerning
the admission of testimony from certain of Clancy's witnesses. We affirm the judgment of the
district court.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: February 22, 1995

Do Not Publish

1.   Section 41.001 of the Texas Property Code provides that a homestead is exempt from
seizure for the claims of creditors with the exceptions of encumbrances for purchase money,
taxes on the property, or contracts for constructing improvements to the property. Tex.
Prop. Code Ann. § 41.001 (West Supp. 1995). The validity of a lien depends upon the status
of the land and the homestead rights that exist at the time the lien is created. Hayes v. First
Trust Joint Stock Land Bank, 111 S.W.2d 1172, 1177 (Tex. Civ. App.-- Fort Worth 1937, writ
dism'd). 
2.   From the record, it does not appear that the trial court rendered judgment on either
estoppel or abandonment. Further, the trial court's findings of fact and conclusions of law
do not mention either issue. Because of this fact and our disposition of Clancy's first point
of error, we find it unnecessary to consider the issues of estoppel and abandonment in points
of error two and three.
3.   Ellen Ross, an employee of Gracey Title Company who assisted in the closing and re-financing transactions on the Spicewood property, testified that she was under the impression
that the trailer on the Spicewood property "could only hold hay, cow medicine, that sort of
thing."
4.   In 1987, Clancy and Robert Day, a developer, were partners in selling ten houses built
in the Hidden Hills subdivision in Spicewood, Texas. Two of the lots that Clancy purchased
for the development venture adjoined the Spicewood property. Clancy's involvement in the
Hidden Hills development continued until at least 1989. Harry Sivley, the president and
C.E.O. of OmniBank in Jackson, was involved in hiring engineers to plat the land into lots
in order to get approval by Hidden Hills developers. Sivley testified that Clancy was also
trying to develop and sell the Spicewood property at that time.