(No. 63234

SHARON KRAMER *et al.*, Appellants, v. EXCHANGE NATIONAL BANK OF CHICAGO, Appellee.

*Opinion filed September 21, 1987.—Rehearing*
*denied December 1, 1987.*

278

SIMON and CUNNINGHAM, JJ., took no part.

William J. Harte, Ltd., of Chicago (William J. Harte and William T. Rodeghier, of counsel), for appellants.

Schwartz, Cooper, Kolb & Gaynor, of Chicago (David P. Leibowitz and Frances R. Klein, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, Exchange National Bank of Chicago, on May 24, 1983, brought a forcible entry and detainer action in the circuit court of Cook County to obtain possession of the residence of the plaintiffs, Sharon and Arnold Kramer. The plaintiffs, on July 7, 1983, filed a

complaint in that same court to enjoin the defendant from selling or otherwise disposing of the residence, which the defendant claimed the plaintiffs had pledged as collateral security on a loan made by the defendant. The circuit court consolidated the suits and granted the plaintiffs' motion for summary judgment. The appellate court reversed and remanded the cause to the circuit court with directions to award possession of the residence to the defendant. (139 Ill. App. 3d 1093.) We granted the plaintiffs' petition for leave to appeal (103 Ill. 2d R. 315).

On November 30, 1979, the defendant loaned $300,000 to American Properties Corporation (APC), a corporation wholly owned by Arnold Kramer (Kramer), one of the plaintiffs. The note was executed by Kramer as secretary/treasurer of APC. The collateral specified in the note of APC was:

> "Trust Deed on property [owned by Ferridge Properties of New York, Inc., a corporation also wholly owned by Kramer] commonly known as 1200 Niagara Street, Buffalo, New York" (hereafter, New York property).

The defendant acknowledged that after the note had been signed and delivered, it inserted the following addition to the listed collateral:

> "Assignment of Beneficial Interest [of the plaintiffs' personal residence] in LaSalle National National [*sic*] Bank Trust No. 44263."

Subsequently APC defaulted on the note, and the defendant, under article 9 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1981, ch. 26, par. 9—504), scheduled a sale of the plaintiffs' residence. However, the sale was automatically stayed when the Kramers, on June 22, 1981, filed a personal petition for reorganization under chapter 11 of the United States Bankruptcy Code in the United States District Court for the Northern District of Illinois. The stay remained in effect for over a year, at

which time it was vacated because the plaintiffs failed to maintain payments of the current interest due on the APC note—a condition required for continuation of the stay. Thereupon, the defendant, on May 3, 1983, conducted a sale of the plaintiffs' residence and, as the highest bidder, purchased it for $120,000. The defendant's forcible entry and detainer action and the plaintiffs' suit for an injunction were successively filed and, as we mentioned above, were consolidated.

Shortly after the plaintiffs had filed under chapter 11, the defendant instituted foreclosure proceedings in New York against the New York property. The proceeding was stayed upon the filing of a bankruptcy petition in New York by the Ferridge corporation, of which Kramer was the sole owner. The stay was later lifted and the defendant was permitted to continue the foreclosure proceeding.

As stated, after the defendant had instituted the forcible entry and detainer action for possession of the plaintiffs' residence, the plaintiffs filed a verified complaint for injunctive relief, which acknowledged that the collateral security for the loan to APC consisted of the New York property and their residence. They claimed, however, that the nonjudicial sale conducted by the defendant of the residence was "void and barred" under article 9 of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 9–501(4)). They attached to the complaint an assignment to the defendant of the beneficial interest in their residence. The beneficial interest was held under a land trust, which resulted in the beneficial interest being legally regarded as personal, not real property. *In re Estate of Alpert* (1983), 95 Ill. 2d 377, 382; *St. Charles Savings & Loan Association v. Estate of Sundberg* (1986), 150 Ill. App. 3d 100, 104-05.

The plaintiffs later filed a motion for summary judgment, complaining that the note of APC had been mate-

rially altered by the defendant's inclusion of the residence as collateral for the loan. The defendant admitted adding the residence as collateral but denied that it was a material alteration of the note. The defendant stated that the inclusion had been authorized under a continuing guarantee and security agreement in favor of the defendant, executed by the Kramers in an independent transaction involving a loan in 1978 to APC by the defendant. Under that agreement, the defendant contended, it was authorized to designate the residence to serve as collateral for that loan and future loans as well, including the one involved here.

The continuing guarantee of the Kramers in the 1978 APC loan agreement provided:

> "FOR VALUE RECEIVED and in consideration of advances, credit or other financial accommodation concurrently herewith being afforded or hereafter to be afforded to American Properties Corporation [APC] (hereinafter called the 'Debtor'), *** by Exchange National Bank of Chicago [the defendant] *** (hereinafter called the 'Bank'), the undersigned [the plaintiffs] hereby guarantees the full and prompt payment to the Bank at maturity and at all times hereafter of all indebtedness, obligations and liabilities *** of the Debtor to the Bank ***, whether now existing or hereafter created ***, whether through *** direct loan or as collateral ***.
>
> * * *
>
> This guaranty shall be continuing, absolute and unconditional, and shall remain in full force and effect with respect to each guarantor until written notice of its discontinuance as to such guarantor *** shall have been actually received by the Bank and also until all guaranteed debt created or existing before receipt of such notice shall have been fully paid.
>
> * * *
>
> To secure payment of the guaranteed debt, the undersigned grants to Bank a security interest in all property of

the undersigned delivered currently herewith or now or at any time hereafter in possession of the Bank ***."

The above referred-to security interest "in all property of the undersigned [the plaintiffs]," transferred under the continuing guarantee, was set out in an accompanying instrument:

"NOW THEREFORE, to secure the payment of all obligations of the Pledgors [the plaintiffs] and American Properties Corporation [APC] to Secured Party [the defendant], whether now or hereafter existing, due or to become due, *** the Pledgors do hereby grant to Secured Party *** a security interest in and to all of the following described property of the Pledgors ***: [the plaintiffs' residence]."

The trial court, in granting the plaintiffs' motion for summary judgment, determined that sale of the residence was "void" on the ground that the note had been materially altered by the defendant. The appellate court reversed, holding, *inter alia*, that there was no material alteration because the plaintiffs had assigned in 1978 their beneficial interest in the residence as collateral for the 1978 loan and future loans as well.

The plaintiffs first argue that the appellate court erred in holding that the APC note had not been materially altered by the defendant. They claim that as the alteration changed the agreement of the parties as to what collateral was to secure the note, the alteration was both material and fraudulent, resulting in the discharge of the liability on the note under section 3—407 of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 3—407).

The contention of the plaintiffs is rejected by section 3—407 of the UCC, which in part provides:

"(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

* * *

(c) the writing as signed, by adding to it or by removing any part of it.

(2) As against any person other than a subsequent holder in due course

(a) alteration by the holder which is *both fraudulent and material* discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 26, par. 3—407.

The Illinois code comment to this section discusses what would constitute a fraudulent alteration of a note:

"This paragraph avoids only an alteration by the holder which is 'both fraudulent and material.' The term 'fraudulent' probably requires a finding that the alteration has attempted to impose an obligation or obligations upon the maker or other party against whom enforcement is sought *additional* to his obligation on the instrument at the time he signed it. *** Where, however, the alteration either does not change or lessen the obligation of the maker or other party, it is not fraudulent." (Emphasis in original.) Ill. Ann. Stat., ch. 26, par. 3—407, Illinois Code Comment, at 250-51 (Smith-Hurd 1963).

The UCC comment discusses the materiality of an alteration:

"Any alteration is material only as it may change the contract of a party to the instrument; and the addition or deletion of words which do not in any way affect the contract of any previous signer is not material." Ill. Ann. Stat. ch. 26, par. 3—407, Uniform Commercial Code Comment, at 252 (Smith-Hurd 1963).

The listing of the beneficial interest as collateral was not a material alteration of the note as it did not change the agreement of the parties: it simply expressed what

was specifically provided for by the terms of the continuing guarantee and security agreement executed by the plaintiffs at the time of the 1978 loan by the defendant to APC. Under these agreements, Arnold and Sharon Kramer guaranteed the payment of all indebtedness of APC to the defendant, existing or thereafter created, and secured such payment by granting the defendant a continuing security interest in their residence. Thus, the defendant's listing of the beneficial interest in the residence was an authorized addition and was not a material, fraudulent alteration of the note. As the defendant did not fraudulently and materially alter the APC note, the debt was not discharged. Ill. Rev. Stat. 1983, ch. 26, par. 3—407(2)(b).

The plaintiffs also argue that the appellate court erred in holding that upon APC's default on the note, the defendant had a right to bring a foreclosure proceeding against the real property collateral, the New York property, and at the same time, under article 9—504 of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 9—504), to conduct a nonjudicial sale of the personal property collateral, the plaintiffs' residence.

The appellate court did not err. Referring to a situation of a debtor's default and in particular where the debt is secured by both real and personal property, section 9—501(4) of the UCC states:

> "If the security agreement covers both real and personal property, the secured party may proceed under this Part [rights and remedies of a creditor upon default] as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect to the real property in which case the provisions of this Part do not apply." Ill. Rev. Stat. 1983, ch. 26, par. 9—501(4).

The language of section 9—501(4) and the comment thereto (Ill. Ann. Stat., ch. 26, par. 9—501, Illinois Code

Comment, at 320 (Smith-Hurd 1974)) show that when the security interest involved consists of both real and personal property, the section gives a secured creditor the option, upon the debtor's default, to proceed against both the real and personal property collateral in separate actions, whether concurrently or successively. The purpose of section 9—501 is "to broaden the options available to a secured creditor upon a debtor's default." *State Bank v. A-Way, Inc.* (1987), 115 Ill. 2d 401, 405-06; Ill. Rev. Stat. 1983, ch. 26, par. 9—501(1).

There have been similar holdings in other jurisdictions. Rejecting the contention the plaintiffs make here, the court in *State Bank v. Hansen* (N.D. 1981), 302 N.W.2d 760, 764, said:

> "[W]e do not construe this subsection [section 9—501(4)] to prohibit a secured creditor from commencing separate actions to proceed independently against the personal property collateral and the real property collateral. If the secured creditor chooses to proceed in separate actions the default provisions of the Uniform Commercial Code apply with regard to the personal property collateral."

In a similar holding, *Wiley v. Bank of Fountain Valley* (Colo. App. 1981), 632 P.2d 282, 285, the court stated:

> "Section [9—501] must be interpreted in light of the overall policy of the Uniform Commercial Code to expand creditor's [*sic*] remedies with respect to personal property collateral. *** [Section 9—501(4)] cannot be interpreted to reduce rights of secured creditors with respect to personal property in cases where both real property and personal property are listed as security for a debt.
>
> ***
>
> *** We conclude that section [9—501(4)] does not prohibit a creditor from proceeding against both types of collateral simultaneously in separate proceedings."

See also *Lenape State Bank v. Winslow Corp.* (1987), 216 N.J. Super. 115, 130-31, 523 A.2d 223, 232;

Hawkland, Lord & Lewis, UCC Series sec. 9—501:10, at 535-36 (1986) (Article 9).

Lastly, the plaintiffs argue, and for the first time, that the appellate court's decision was in error in that it "served to circumvent" their right to a homestead exemption in their residence (Ill. Rev. Stat. 1983, ch. 110, par. 12—901 *et seq.*). This point will not be discussed, as issues not raised in the trial and appellate courts are deemed to have been waived. *Board of Education v. Kusper* (1982), 92 Ill. 2d 333, 343; *Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 526.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

SIMON and CUNNINGHAM, JJ., took no part in the consideration or decision of this case.