ENIS WAKEFIELD, Plaintiff-Appellant, v. SEARS, ROEBUCK AND COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—91—1456

Opinion filed April 9, 1992.

Leonard M. Ring & Associates, Inc., of Chicago (Leonard M. Ring, William J. Jovan, and Leslie J. Rosen, of counsel), for appellant.

Arnstein & Lehr, of Chicago (Arthur L. Klein, Michael A. Stiegel, and John T. Wagener, of counsel), for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Enis Wakefield, brought a product liability action against the defendants, Sears, Roebuck and Co. (Sears) and Johnson Controls, Inc. (Johnson), seeking to recover damages for injuries he sustained when a car battery exploded. Prior to trial the defendants moved to dismiss the complaint as a discovery sanction pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)). The motion alleged that the plaintiff failed to preserve certain evidence critical to resolving the issues of proximate causation and product misuse. Following a hearing, the trial court granted the defendants' motion and dismissed the complaint with prejudice. The plaintiff has appealed, contending that the trial court abused its discretion in imposing so drastic a sanction.

The plaintiff was injured on June 13, 1984, when a car battery manufactured by Johnson and sold by Sears exploded near his face, causing battery acid to come into contact with his eyes. The plaintiff retained the law firm of Leonard Ring & Associates, P.C., to represent him in his lawsuit against the defendants. Tim Osicka, an associate in the firm, hired an investigator named Joel Pompa to interview witnesses to the incident.

Pompa took recorded statements from two occurrence witnesses, Gary Wakefield and Johnny Jones, and from two prior owners of the car battery, Tony Wakefield and Sedgwick Barry. Pompa then sent Tim Osicka a three-page document (the Pompa report) dated February 7, 1985. The Pompa report contained summaries of the witnesses' statements. Also, under the heading "Attachments," the report listed the "Recorded statement[s], tape[s] and resume[s]" of Gary Wakefield, Johnny Jones, Tony Wakefield and Sedgwick Barry. These recorded statements, or witness statements, are of central importance to this appeal.

During discovery, the defendants made several attempts to obtain the witness statements that were listed as attachments to the Pompa report. The plaintiff's attorneys agreed to look for them, but their attempts were unsuccessful. The record shows that Tim Osicka left the firm and was succeeded in handling the Wakefield case first by Randall Peters, then by Henry Gruss. The plaintiff suggested that the witness statements may have been lost as a result of the change of lawyers handling the file. According to the defendants, the record contains some indication that the contents of the missing witness statements may have shown that the battery was being misused at the time it exploded. Also, the defendants maintain that the record establishes that the allegedly missing witness statements were shown to the plaintiff's expert witness at a time after the plaintiff claimed they were lost.

A summary of the parties' theories concerning the accident and the evidence adduced during discovery is necessary to understand the significance of the missing witness statements.

The plaintiff's theory was that no one was touching the battery at the time it exploded. As stated earlier, the Pompa report contained summaries of the recorded statements that Pompa took from Gary Wakefield and Johnny Jones, both of whom witnessed the occurrence. According to the summaries, Gary Wakefield stated that he owned a 1957 Chevy which was a collector's item. When the car did not start on the date of the occurrence, he asked Johnny Jones to look under the hood. Wakefield stated that he and Jones "noticed that the cable to the battery was loose," and that Jones went to get a pair of pliers to tighten the cable. When Jones returned and was about to "hover over the battery," the battery exploded and injured the plaintiff, who was standing next to Jones. According to the summary, "Mr. [Gary] Wakefield stated that no one touched the battery, it just blew up before Johnny Jones could tighten the cable onto the battery. He could see this because when he was in the car looking the hood was up but

he could see what was going on." According to the summary of Jones' statement, Jones also stated that he went to get the pliers and while he was standing about a foot from the car, the battery blew up. Again according to the Pompa report, "Mr. Jones also stated that he had not even touched the battery when the battery had blown."

In his deposition on May 12, 1988, Gary Wakefield stated that prior to the date of the accident, he never had any problem starting the car. When the car would not start on the date of the accident, he checked the battery "to see if the posts was [sic] loose on it, to see if the cables was [sic] loose." He "jiggled the cables and pushed, you know, wiggled them to see if they was [sic] loose." Gary Wakefield found that the cables were not loose and decided to take the cables off to check for corrosion. He stated that the plaintiff went into the house for pliers and handed them to Johnny Jones. Gary Wakefield told the plaintiff and Jones to wait while he tried once more to start the car. When he turned the ignition, the battery exploded.

On May 30, 1990, the defendants deposed the plaintiff's expert witness, Dr. Ralph E. Armington. Armington testified that in his opinion the positive post on the battery contained a manufacturing defect which caused the positive post to break into two pieces. The electrical current flowing between the two pieces produced a spark which ignited an explosive mix of gases around the top of the battery. Defense counsel questioned Armington about notes which Armington had taken in July of 1986. The notes indicated that Armington returned a telephone call from Randall Peters, then stated: "Wakefield says post loose on battery, discussion of two versions, one hr." When asked the significance of the note, Armington replied that he thought that Peters told him one of the Wakefields said that the post was loose on the battery. As to the "discussion of two versions," Armington explained that "before this suggestion that the post was loose on the battery I was under the impression that attempts to check the leads for looseness indicated that they were not loose and did not reveal looseness of the post on the battery."

Defense counsel then questioned Armington concerning six pages of notes which he took on December 28, 1989, two days after the meeting with the plaintiff's attorney, Henry Gruss. The first page began with the notation "J. Pompa, 2-7-85 report, T. Osicka, three pages. Page 1, date of accident, 6-13-84, battery blew up." The remainder of page 1 lists the four witnesses in the same order in which they appear in the Pompa report. Next to each name are notes consistent with the summaries contained in the Pompa report.

The notes on page 2 are significant because they provide the basis of the trial court's decision to dismiss the plaintiff's complaint. The notes state as follows:

"Per G. Wakefield: Noted + post loose (a little) prior to D/A. Starting problems intermittent – remedy wobble + post. What they were doing on D/A.

Per T. Wakefield: Noted + post loose. Wobble developed after purchase from S. Barry.

Per S. Barry: No wobble when new. Bought from Sears Homan."

Armington explained that the symbol "+" stood for "positive" and that "D/A" meant "Date of Accident." It is the defendants' contention on appeal that the information contained in the above-quoted note was not contained in the Pompa report, in the deposition testimony, or anywhere else in the record and that it could only have come from the "missing" recorded witness statements. Page 3 of the notes contained a summary of information "Per Ennis Wakefield," as well as Armington's summary of the "Facts" and "Scenario." Pages 3 through 6 are notes on the plaintiff's deposition. Armington's invoice for December 28, 1989, indicated that he billed four hours for reviewing statements and the plaintiff's deposition.

Defense counsel asked Armington where he obtained the information on page 2 of his notes. Armington first stated that he believed the notes were taken during a rereading of the Pompa report. Armington then stated, "Or no, the looseness in Gary Wakefield's purported statement is at the time of the accident, not earlier. I don't recall where the things on Page 2 came from." Later in the deposition, when asked whether he had ever seen "tapes or resumes," Armington answered that the way he took the notes on page 2 suggested that he "saw something" but that he did not have any recollection beyond that.

Shortly after Armington's deposition, the defendants moved to dismiss the complaint as a discovery sanction pursuant to Supreme Court Rule 219(c). (134 Ill. 2d R. 219(c).) The motion alleged that Armington's deposition testimony showed that he had been provided with the recorded statements listed as attachments to the Pompa report after the defendants had been told that the tapes and recorded statements could not be located. The motion further alleged that, based on Armington's notes, it was clear that the missing statements contained "crucial evidence essential to defendants' ability to properly defend this litigation on the basis of product misuse/abuse and proximate cause."

After considering the arguments of counsel and the documents before it, the trial court found that Armington in his deposition said things which were unfavorable to the plaintiff's case and "totally contrary" to the statement summaries contained in the Pompa report. The court then made the following comment:

> "But the point is in 1986, you said they existed. And you said then later you couldn't find them. At the point in time you said you couldn't find them, you produced them to the expert and now you can't find them again. And now your expert can't find them again. I am trying to fashion a remedy in this situation. It is difficult. What is your suggestion?"

When the plaintiff's attorney failed to suggest a satisfactory remedy, the court specifically found that the defendants had been prejudiced by the plaintiff's failure to preserve crucial evidence and that in its opinion dismissal of the complaint was warranted. The complaint was then dismissed.

The plaintiff filed a lengthy motion to reconsider supported by the affidavits of Armington, Gruss and Peters. Gruss and Peters both averred that they had never seen any witness statements other than the summaries contained in the three-page Pompa report and that they had never given any such statements to Armington. Armington stated in his affidavit that he had never "seen, obtained or reviewed the witness statements referenced in the three-page Pompa Report" and that "any and all references in my file notes to my review of any statements pertains to my review of the Pompa Report." Armington further averred that page 2 of his December 28, 1989, notes was "a summary of information which I believe was conveyed to me orally two days earlier in meeting with H. Gruss."

The trial court denied the motion to reconsider, noting that the statements in Armington's affidavit "absolutely" and "flatly" contradicted his earlier deposition testimony. The plaintiff then brought this appeal.

On appeal, the plaintiff contends that the trial court abused its discretion in dismissing his complaint as a discovery sanction. Specifically, the plaintiff argues that the evidence did not establish that he intentionally destroyed or concealed the missing witness statements and that any prejudice to the defendant as a result of the missing statements could have been cured by a sanction less drastic than dismissal.

■ Illinois Supreme Court Rule 219(c) addresses the sanctions a trial court may impose when faced with a party's failure to comply with the discovery rules. (134 Ill. 2d R. 219(c).) The rule provides that

the court may enter a "just" order where a party unreasonably refuses to comply with the discovery order. The rule then outlines a nonexclusive list of sanctions, ranging from the issuance of a stay in proceedings to the dismissal of the noncomplying party's cause of action with prejudice.

●2 The imposition of sanctions pursuant to Rule 219(c) is a matter generally left to the discretion of the trial court. (*Wilkins v. T. Enterprises, Inc.* (1988), 177 Ill. App. 3d 514, 517, 532 N.E.2d 469.) However, the court should impose sanctions with the goal of accomplishing discovery rather than punishing the offending party. (*Wilkins*, 177 Ill. App. 3d 514, 532 N.E.2d 469.) This court has stated that a "just" order under Rule 219(c) is one which, to the degree possible, ensures both discovery and trial on the merits. (*White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 1028, 398 N.E.2d 24, 26-27.) An order of dismissal with prejudice is a drastic sanction to be invoked only in those cases where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority. (*White*, 78 Ill. App. 3d 1025, 398 N.E.2d 24.) Although prejudice to the opposing party is a factor to be considered in determining the appropriateness of a sanction (*Harris v. Harris* (1990), 196 Ill. App. 3d 815, 823, 555 N.E.2d 10), the dismissal of a complaint should be employed only as a last resort (*Wilkins*, 177 Ill. App. 3d 514, 532 N.E.2d 469).

The plaintiff contends that the dismissal of his complaint constituted an abuse of discretion because the evidence did not support the trial court's findings that the witness statements in question were in existence when the defendants requested their production and that the plaintiff showed them to his expert witness after he claimed he could not find them. The plaintiff argues that, at most, the record shows that the witness statements were at one time attached to the Pompa report but were lost as a result of the change of lawyers handling the file.

Armington's notes of December 28, 1989, state that Gary Wakefield noted that the positive post was loose prior to the date of the accident, that starting problems were intermittent, that the remedy was to wobble the positive post and that this is what was being done on the date of the accident. There is some suggestion that as early as 1986 Tim Osicka's file contained a note mentioning prior looseness of the positive post. Also, Gary Wakefield's deposition refers to "jiggling" the cables and post to check for looseness on the date of the accident. We cannot find a basis in the record for Armington's notes that the car had intermittent starting problems and that the remedy

was to wobble the positive post. In his deposition, Armington said that although the way he took the notes suggested that he "saw something," he had no independent recollection of where he obtained the information. In a subsequent affidavit, Armington averred that the information came from a meeting with the plaintiff's attorney two days earlier. Henry Gruss and Randall Peters both filed affidavits stating that they had never seen any witness statements other than the summaries contained in the three-page Pompa report and that they had never given any such statements to Armington.

■■ The question before us is whether the evidence and the circumstances are sufficient to allow the inference that the information contained in Armington's notes came from the allegedly missing witness statements. While there is some support for this inference, we believe that a stronger showing of wrongdoing is necessary in order to conclude that the plaintiff was guilty of a "deliberate, contumacious or unwarranted disregard of the court's authority." (*White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 1028, 398 N.E.2d 24, 26-27.) As stated earlier, the dismissal of a complaint with prejudice deprives the plaintiff of his day in court and should therefore be employed only as a last resort. *Wilkins v. T. Enterprises, Inc.* (1988), 177 Ill. App. 3d 514, 517, 532 N.E.2d 469.

The plaintiff in his brief has suggested certain actions short of dismissal which would alleviate the prejudice suffered by the defendants as a result of the missing witness statements. He notes that the defendants would be able to cross-examine Armington about his notes and devise a scenario of product misuse based on those notes. Also, the plaintiff suggests that the defendants could seek a jury instruction on the plaintiff's failure to produce evidence. Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1992) (IPI) provides:

> "If a party to this case has failed to offer evidence within his power to produce, you may infer that the evidence would be adverse to that party if you believe each of the following elements:
>
> 1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.
>
> 2. The evidence was not equally available to an adverse party.
>
> 3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him.

4. No reasonable excuse for the failure has been shown." (IPI Civil 3d No. 5.01.)

While not limiting the trial court to any particular sanction or remedy, we agree with the plaintiff's argument that the cause should be reversed and remanded for the imposition of a sanction less drastic than dismissal of the complaint.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.