THOMAS CIRRINCIONE *et al.*, Plaintiffs-Appellants, v. WESTMINSTER GARDENS LIMITED PARTNERSHIP *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—03—0659

Opinion filed September 8, 2004.

Arnstein & Lehr, L.L.P., of Chicago (Arthur L. Klein and Richard K. Hellerman, of counsel), for appellants.

Cassiday, Schade & Gloor, L.L.P., of Chicago (Patricia J. Hogan and Donald

F. Ivansek, of counsel), for appellees Broadacre McKinley, Inc., and Westminster Gardens Limited Partnership.

Ryan, Smolens & Jones, of Chicago (Richard T. Ryan and Mark F. Smolens, of counsel), for appellee Altounian Builders.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, Thomas and Cathy Cirrincione, brought an action for property damage against defendants Altounian Builders (Altounian), Broadacre McKinley, Inc. (Broadacre), and Westminster Gardens Limited Partnership (Westminster) (sometimes collectively defendants). On the second day of a jury trial, the circuit court granted defendants' motion to dismiss the case with prejudice, finding that plaintiffs had submitted altered evidence in responses to discovery and as exhibits in support of a response to a dispositive motion. Defendants subsequently filed fee petitions which the court granted, after a hearing, in the requested amount of $91,580.16.

Plaintiffs appeal, asserting the circuit court abused its discretion (1) in dismissing the case as a discovery sanction; and (2) in awarding defendants all attorney fees and costs as a discovery sanction.

In their verified complaint plaintiffs allege that on June 1, 1999, they purchased from Westminster a condominium unit to be constructed in Westminster Gardens, Lake Forest, Illinois. Broadacre, the manager of Westminster Gardens and a general partner of Westminster, hired Altounian as its general contractor to construct the building. Subsequent to closing on the unit, plaintiffs hired Elegant Concepts, Ltd. (Elegant), to install a Brazilian cherrywood floor in their condominium unit at a cost of $47,000.

The verified complaint alleged further that, in or about February 2000, Elegant, while installing the floor, noticed a water leak in one of the ceilings in the unit. After being notified of the leak, Broadacre arranged for Altounian to enter the unit and repair the leak. In the process of repairing the leak, an Altounian employee damaged a sprinkler head in the ceiling, causing water to flood the unit and irreversible damage to the floor.

Count I of the two-count complaint alleged breach of contract by Broadacre and Westminster. Count II alleged negligence on the part of Altounian. Plaintiffs claimed that the damage to the floor caused by the sudden water leak was "in excess of $60,000." Plaintiffs also claimed damages in the amount of $8,000 per month in lost rent beginning on April 1, 2000, because they were unable to move out of their current home and lease the premises as planned, due to the repair work.

On January 2, 2001, Broadacre and Westminster requested production of documents pursuant to Supreme Court Rule 214 (166 Ill. 2d R. 214) including documentation relating to their claimed damages. Requests numbers eight and nine sought:

"8. All documentation, including, but not limited to appraisals, insurance records, bills, receipts, invoices, contracts, proposals, etc. which purport to itemize and/or assess the extent of the claimed damage and/or the cost of labor and materials to repair the claimed damage to plaintiffs' condominium unit, located at 333 East Westminster, Unit 1C, Lake Forest, Illinois, relative to the occurrence specified in plaintiffs' Verified Complaint.

9. All documentation, including, but not limited to bills, receipts, invoices, contracts, proposals, etc. from any date whatsoever which relates to repairs and/or improvements to the plaintiffs' condominium unit located at 333 East Westminster, Unit 1C, Lake Forest, Illinois."

Plaintiffs responded to request number eight with photocopies of the fronts and backs of five personal checks paid to Elegant, totaling $46,000. On each of the checks, the words "floor replacement" or "replacement floor" appeared handwritten on the memo line in the bottom left-hand corner. Plaintiffs objected, however, to request number nine, which sought documentation evidencing the amounts paid to Elegant for all other work it performed at the condominium unit. None of the parties pursued a ruling on this objection.

On October 25, 2001, plaintiffs filed an amended verified complaint in which they revised their theory of liability against Broadacre and Westminster, now asserting a negligence claim based upon the conduct of Altounian, which they alleged was defendants' agent or apparent agent. The amended verified complaint also stated that plaintiffs paid $47,000 for the original installation of the wood floor and revised their damage claim to $42,000 for floor replacement, as well as their claim for rental loss to $16,000.

On January 15, 2002, Broadacre and Westminster moved for summary judgment, claiming that neither was liable for plaintiffs' damages pursuant to the contract and warranty. Broadacre and Westminster further argued that Altounian was neither an actual nor apparent agent of Broadacre or Westminster.

On February 6, 2002, plaintiffs responded to defendants' motion for summary judgment, which was signed by plaintiffs' counsel. Photocopies of the five personal checks with the handwritten notations "floor replacement" or "replacement floor" on the memo line were attached as an exhibit as evidence of their payment to Elegant for the replacement of the floor.

On February 27, 2002, the circuit court denied defendants' motion for summary judgment.

Trial began on February 3, 2003. At the start of trial, defendants moved to compel production of any documentation with respect to payments made to Elegant for work performed in the unit in addition to the floor replacement work at issue or, alternatively, to bar plaintiffs from maintaining a claim for damages based upon their failure to produce supporting documentation. In support of the motion, defense counsel argued:

"Finally, with respect to testimony, Mr. Cirrincione himself does not testify that he paid $46,000. I think the amount he testifies to is $42,000. And then we were given canceled checks in the amount of $46,000 which are several different checks that add up to that amount which we have no knowledge as to what those checks were actually for because, as Your Honor knows now, a lot of work was going on and being performed by Elegant at this condo during this period of time."

In response, plaintiffs' counsel acknowledged that the documents relating to other work being performed by Elegant were requested in discovery, but asserted that defendants' failure to act upon plaintiffs' objections to their production waived their rights to this documentation.

After hearing argument, the circuit court denied defendants' motion to compel and defendants' motion to bar plaintiffs from maintaining a claim of damages. The court agreed with plaintiffs that defendants' motion to compel was untimely. Defendants were barred from raising plaintiffs' nonproduction of documents pertaining to any other contracting work performed by Elegant at trial.

Plaintiffs' first two witnesses at trial were Everett Schaubert, Altounian's foreman for the latter stages of the construction of the condominium building, and Larry Floria, who issued the "second opinion" about the damage to the floor and made the $42,000 bid for the work to replace the damaged floor.

After the first day of trial proceedings, counsel for defendant Altounian advised the circuit court that he had subpoenaed Harris Bank to produce at trial its microfilm copies of the five checks plaintiffs had produced as evidence of payment to Elegant for the floor replacement and that a representative of Harris Bank was in the courtroom with the documents. Plaintiffs' counsel objected on the ground that no notice of the subpoena had been given plaintiffs, contrary to their Supreme Court Rule 237 (166 Ill. 2d R. 237) pretrial request. The court ordered that the records be brought in. The court reviewed *in camera* Harris Bank's microfilm copies of the five checks, on which it found that the memo line on each check was blank.

The following day, the circuit court raised the issue of plaintiffs' prior submission of photocopies of the five checks with the handwritten notations on the memo line as evidence of payment for repairs to their floors. The court then turned over to all counsel the copies of the checks that had been delivered by Harris Bank pursuant to the trial subpoena for their review. Immediately after counsel's review of the documents, defendants moved to dismiss the case with prejudice and for costs and fees. Plaintiffs' counsel objected and stated that, if asked, plaintiff Thomas Cirrincione would "testify that when he received the checks back from the bank, he wrote for his own records, floor replacement in the memo line."

The circuit court made the following comments, among others, concerning the five checks:

> "I have evidence that has been altered, submitted to the Court by an attorney without distinguishing the fact that it has been altered in any way. It was submitted to the Court as the original documents. It has been tendered in response to discovery as the original documents. It goes to the major issue in this case which is how much it was for. I have no idea. There is nothing else that would support the allegation of a payment of $46,000 other than the testimony that now would easily be called into question because of the altering of evidence that had been submitted to this Court. If you can think of a sanction that is less than what defendants have requested, I can't really come up with one.
>
> ***
>
> If there has been an alteration on a document that you've submitted and filed with the Court, you have to let the Court know about it. You have filed a response to the motion for summary judgment in front of this Court. You have done that. And you have attached to it those checks which have been altered. You did not point out to Judge McNamara that they had been altered. Nowhere in your pleadings have you disclosed these alterations. Now, in response to the discovery, the altered checks were tendered to the defendants. You just cannot say well then fine we'll go ahead with the unaltered checks if Counsel had not subpoenaed them. You would have been presenting to the jury altered checks."

After argument by the parties, the court conducted a *voir dire* examination of plaintiff Thomas Cirrincione at which he testified that after he received the checks back from the bank, he reviewed them and made notes on the memo line of the checks to remind himself of the purposes for which the checks were written. He customarily makes notes on checks after they are returned from the bank and has done so on many other occasions. In explaining why he never told anyone during the course of the case that he had placed the notations on the

memo lines after the checks were cashed, he stated: "Nobody asked the question, and they [the checks] were for floor replacement. So I didn't think of saying anything further."

The circuit court granted defendants' motion to dismiss, stating, in pertinent part:

"I have given this—these two motions quite a bit of consideration. I also considered the testimony of the plaintiff in his responses during the voir dire, and I find that his testimony defies logic; that the checks go over several months, they come back in different packets, they come back at different times.

The proper way—not the proper way, but the way that you—the plaintiff states that he did it so that he knew what he was paying for, but that is what you do when you write the check, not when it comes back after it's been cleared.

I find it—his testimony incredible, unreliable, and his testimony too convenient for the purposes of trial.

I also considered all alternatives and what sanctions could be imposed. These alterations to—or tampering with the evidence was done, it appears, to buttress the plaintiffs' case and mislead both the jury and the Court. In considering the alternatives, I have to consider what is fair to both the plaintiffs and the defendants, and I have reviewed all different types of possibilities of sanctions.

However, I find that the tampering with this evidence is so central to the case and so undermines any additional evidence that would be submitted to this Court. It undermines prior evidence that was submitted. It undermines previous rulings on evidence during the course of the trial with witnesses that have already testified and left. And it undermines my rulings on motions in limine.

Therefore, I do not see any other sanction that can be entered other than dismissing this case with prejudice, and I will award costs and fees to the defendants."

The court then dismissed the case with prejudice and granted defendants leave to file a petition for fees and costs.

At the subsequent hearing on defendants' fee petitions, plaintiffs' counsel orally objected to the imposition of fees, but did not file a written motion to reconsider the order granting defendants' leave to petition for fees. Plaintiffs' counsel also waived the right to have an evidentiary hearing on the fee petitions. The circuit court then awarded the fees as requested in the petitions and entered judgment thereon.

## I

Plaintiffs argue that the circuit court's decision to dismiss the case with prejudice and award defendants all attorney fees and costs was

far too severe a sanction and an abuse of the court's discretion. Plaintiffs assert that the court erred in unilaterally determining Thomas Cirrincione's credibility and in concluding that plaintiffs were attempting to mislead the parties and the court as to the content of the evidence.

■ A court of review must give considerable deference to the circuit court's decision to impose sanctions; its decision will not be reversed absent an abuse of discretion. *Burrows v. Pick*, 306 Ill. App. 3d 1048, 715 N.E.2d 792 (1999). A court abuses its discretion if no reasonable person would take its view (*McClaughry v. Village of Antioch*, 296 Ill. App. 3d 636, 695 N.E.2d 492 (1998)), or where it improperly applies recognized principles of law, or applies the wrong legal standards, or reaches conclusions unsupported by law. *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 614 N.E.2d 1194 (1993); *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 795 N.E.2d 281 (2002); *Save the Prairie Society v. Greene Development Group, Inc.*, 338 Ill. App. 3d 800, 789 N.E.2d 389 (2003). The predicate to such deference is that the sanction decision is factually and legally informed and reasoned. See *In re Estate of Smith*, 201 Ill. App. 3d 1005, 559 N.E.2d 571 (1990) (*Smith*).

■ In the present case, the record demonstrates that the circuit court relied upon factual errors and misapplied established rules and legal principles, requiring outright reversal and remandment for a new trial.

It is difficult to ascertain whether the circuit court's sanction of dismissal was imposed under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)) (Rule 219(c)) or Rule 137 (155 Ill. 2d R. 137) (Rule 137). Defendants themselves are unsure, as evidenced by their argument claiming either a Rule 219(c) sanction or a Rule 137 violation. A sanction order, at the minimum, should specifically identify the rule under which the order was entered, which the court here did not do, as well as the specific reasons for entry of the sanction order. See *Smith*, 201 Ill. App. 3d at 1008. The record here demonstrates the need for reversal and remandment whether either rule is applied.

The circuit court's factual justification for the dismissal was incorrect. The court stated that the "tampering" on the five checks "undermine[d] prior evidence that was submitted"; however, neither the checks nor any other evidence regarding plaintiffs' damages had been placed before the jury as of the time photocopies of the original Harris Bank checks were presented to the court. Next, the court claimed that the writing on the checks by Thomas Cirrincione "undermine[d] previous rulings during the course of the trial"; however, there had been no rulings pertaining to the checks them-

selves. The only ruling made by the court regarding plaintiffs' payment for repairs was one which prohibited defendants from raising a claim that plaintiffs had not produced evidence of payments to Elegant for other work it performed in the condominium unit. The reason for this ruling was that defendants previously had waived this issue during discovery; it had nothing to do with the five checks. The court also believed that the writing on the five checks related to "witnesses that have already testified and left," another factual assertion unsupported by the record. As of the time the photocopies of the five Harris Bank checks came to light, only two witnesses had testified, Everett Schaubert, a former Altounian employee, and Larry Floria, a general contractor and consultant who investigated the damage to the floor; neither testified in regard to plaintiffs' monetary damages, although Floria testified to the amount he bid to complete the work.

## II

The circuit court's decision also misapprehends the applicable law. The court continually applied the words "alter," and "alteration," to the facts of this case. Clearly, these terms are used erroneously in connection with notations made upon five checks by Thomas Cirrincione, payable to Elegant Concepts, Ltd., which was neither a party nor related to defendants here. The checks were negotiated by Elegant, not defendants here, and were paid by plaintiffs' bank to Elegant, not defendants here. The checks, instead, were submitted by plaintiffs as some evidence of payment for repairs to a floor allegedly damaged through defendants' negligence. Defendants were never identified as, nor claimed to be, holders in due course of the five checks.

Checks are negotiable instruments and are subject to the provisions of the Uniform Commercial Code—Negotiable Instruments (the Code) (810 ILCS 5/3—101 *et seq.* (West 2000)). Under the Code, there cannot be an alteration on a check, leading to the conclusion of fraud, where the party claiming alteration or fraud is not a party to the subject instrument, as is the case here. See 810 ILCS 5/3—407 (West 2000). As the supreme court noted, in a case in which material alteration of notes after execution was claimed:

> "The Illinois code comment to this section discusses what would constitute a fraudulent alteration of a note:
>
>> 'This paragraph avoids only an alteration by the holder which is "both fraudulent and material." The term "fraudulent" probably requires a finding that the alteration has attempted to impose an obligation or obligations upon the *maker* or other *party* against whom enforcement is sought additional to *his obligation on the instrument* at the time he signed it. *** Where, however, the alteration either does not change or

lessen the obligation *of the maker or other party*, it is not fraudulent.' " (Emphasis added and ommitted.) *Kramer v. Exchange National Bank of Chicago*, 118 Ill. 2d 277, 283, 515 N.E.2d 57 (1987), quoting Ill. Ann. Stat., ch. 26, par. 3—407, Illinois Code Comment, at 250-51 (Smith-Hurd 1963).

In the present case, as earlier noted, defendants were neither parties to the five checks on which Thomas Cirrincione made his postpayment notes, nor holders in due course. They never saw the checks until litigation over their failure to pay for damages ensued. As to defendants, then, and this litigation, there was no alteration or fraud under the statute governing these matters. See also *Hutcheson v. Herron*, 131 Ill. App. 2d 409, 266 N.E.2d 449 (1970); *Northwestern National Insurance Co. of Milwaukee v. Lutz*, 71 F.3d 671 (7th Cir. 1995).

With respect to the notations made by Thomas Cirrincione on the checks cancelled by plaintiffs' bank after payment to the payees, photographic copies of the originals subpoenaed from the bank, together with the checks returned by the bank to Thomas Cirrincione upon which he later made his notations, posed questions of credibility to be considered by the jury as fact finders, not the judge; what weight, if any, should have been given to these documents with respect to plaintiffs' claim for damages was within the jury's province. *Amann v. Frederick*, 257 N.W.2d 436 (N.D. 1977).

Lastly, the entry of a "death sentence" sanction, dismissal, was grossly inappropriate under the factual law and the rules. No affirmatively "damaging evidence" to plaintiffs' case was concealed by plaintiffs. At worst, the two sets of checks raised some question as to plaintiffs' credibility in their representation that they paid Elegant $46,000 for a replacement floor. Defendants here possessed no evidence that plaintiffs did not pay Elegant for a replacement floor. The fact that the subpoenaed photocopied checks raised a question as to Thomas Cirrincione's conduct and motivation in making the notations on the checks after they were paid and he received them back from the bank does not, without more, demonstrate that this was a baseless lawsuit. Although not formally admitted by Altounian, liability was certainly not disputed, for its employee, Angel Lador, admitted that he negligently, if accidentally, activated the sprinkler head on the ceiling of plaintiffs' living room which damaged plaintiffs' Brazilian cherrywood floor. Arguably, Altounian caused *some* damage to plaintiffs for which plaintiffs were entitled to compensation. Plaintiffs had a good-faith lawsuit against defendants based upon defendants' negligent conduct.

## III

Significantly, there were two plaintiffs involved in this lawsuit, Thomas Cirrincione, and his wife Cathy Cirrincione, co-owner of the

subject property. Nothing in the record reveals any act by Cathy which would justify her deprivation of whatever damages were caused by defendants to her interests in the property.

Here, the circuit court had many options available to it to allow the trial to go forward even in the face of issues involving Thomas Cirrincione's conduct in the five-check production. First, the court could have ordered a redaction of the memo line on each cancelled check before their submission to the jury. Alternatively, the court could have denied admission into evidence of the checks entirely and required proof of damages by some other form of evidence. Further, the court could have precluded testimony by Thomas Cirrincione. Plaintiffs' counsel assertedly advised the court that Joseph Faraone, Elegant's president, who was on the witness list, would have testified that he received the payments for the replacement floor he installed. Faraone's name was included on a list of witnesses to be read to potential jurors and his testimony was referenced during arguments on motions *in limine*. Therefore, from an evidentiary perspective, the checks took on a lesser role, for had the jury heard all the testimony, there would have been direct evidence both of the payment by plaintiffs and of the receipt of payment for the work performed by Faraone, which would have been sufficient to establish plaintiffs' damages. See *Saunders v. Wilson*, 114 Ill. App. 2d 380, 382, 253 N.E.2d 89 (1969) ("it is not the bill which in itself provides the proof. It is the uncontroverted testimony of the plaintiff under oath that the repairs were necessitated by the accident, that the repairman was in the business of making such repairs, and that he paid the bill. Such a transaction is not suspect. *** Testimony as to the fact of payment is *** admissible"); *Ross v. Cortes*, 95 Ill. App. 3d 772, 420 N.E.2d 846 (1981).

The circuit court's decision here to take the determination of the credibility of Thomas Cirrincione, the most important witness in the case, out of the hands of the jury and to simply find that (1) he was not credible; and (2) he had no right to take his and Cathy Cirrincione's case to trial at all, far exceeded the considerable authority afforded to trial courts. *Wakefield v. Sears, Roebuck & Co.*, 228 Ill. App. 3d 220, 592 N.E.2d 539 (1992) (*Wakefield*). The court's decision here rested squarely on its disbelief of Thomas Cirrincione's explanation as to his practice in writing on the checks after he received them back from the bank for purposes of his own record keeping. Nothing was mentioned as to Cathy Cirrincione's right to trial. As in *Wakefield*, there was no "showing of wrongdoing" that plaintiffs were "guilty of a 'deliberate, contumacious or unwarranted disregard of the court's authority.' " *Wakefield*, 228 Ill. App. 3d at 227, quoting *White v. Henrotin Hospital Corp.*, 78 Ill. App. 3d 1025, 1028, 398 N.E.2d 24 (1979).

It was merely the court's belief that Thomas Cirrincione was being untruthful as to why he made postpayment notations on the five checks. As in *Wakefield*, this decision was one that belonged to the jury. After evidence that plaintiffs were damaged by defendants' conduct and Thomas Cirrincione explained his own conduct, the controversy became exclusively an issue of credibility, which the court should not have usurped.

Sanction orders are not authorized to punish the wrongdoer. A " 'just' order under Rule 219(c) is one which, to the degree possible, ensures both discovery and trial on the merits." *Wakefield*, 228 Ill. App. 3d at 226. Dismissal with prejudice is "not encouraged." *Cedric Spring & Associates, Inc. v. N.E.I. Corp.*, 81 Ill. App. 3d 1031, 1035, 402 N.E.2d 352 (1980). There is a "strong policy which favors an adequate hearing of a litigant's claim on the merits." *Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co.*, 264 Ill. App. 3d 878, 885, 637 N.E.2d 1103 (1994). The circuit court abused its discretion in dismissing the case as a discovery sanction. The issue of attorney fees must be reassessed at the conclusion of the trial, if still appropriate.

Accordingly, the circuit court of Cook County's order in its entirety is reversed and the cause remanded for trial.

Reversed and remanded.

THEIS, J., concurs.

JUSTICE QUINN, dissenting:

I respectfully dissent. I believe a review of the record shows that the circuit court imposed sanctions pursuant to Rule 137. Rule 137 may be the basis for sanctions despite the lack of the rule's specific mention in the order. *Duignan v. Lincoln Towers Insurance Agency, Inc.*, 282 Ill. App. 3d 262 (1996). Here, although the circuit court did not set out its reasons for the sanctions in the written order, it did make its reasons for the sanction of dismissal and for attorney fees and costs more than clear on the record. The court made specific reference to the pleadings that contained the altered evidence, signed by counsel and filed in court. The court also specifically referenced Supreme Court Rule 137 (155 Ill. 2d R. 137) on the record. The court's findings were expressly incorporated into the judgment order by reference.

"The decision to impose sanctions under Rule 137 is committed to the sound discretion of the circuit judge, and that decision will not be overturned unless it represents an abuse of discretion. [Citations.]" *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998). "[W]e must primarily determine whether the trial court's decision was

informed, based on valid reasons, and whether the decision followed logically from the application of the reasons stated." *Thomas Hake Enterprises, Inc. v. Betke*, 301 Ill. App. 3d 176, 182 (1998).

Defendants Broadacre and Westminster argue that the "signing of pleadings" requirement under Rule 137 occurred when plaintiffs filed a response to defendants' motion for summary judgment on February 6, 2002, signed by plaintiffs' counsel. Copies of the five checks were attached as an exhibit to this pleading. Plaintiffs asserted in the response that the fronts and backs of the checks to Elegant were evidence of their payment for the replacement of the floor.

The majority correctly point out that the trial court was in error when it made a finding that submission of the altered checks "undermine[d] previous rulings on evidence during the course of the trial with witnesses that have already testified and left." However, tendering the altered checks certainly had an impact on the denial of defendants' motions for summary judgment and for more specific discovery and on the circuit court's rulings on motions *in limine*.

Relying on section 3—407 of the Uniform Commercial Code (810 ILCS 5/3—407 (West 2000)), the majority assert "there was no alteration or fraud under the statute governing these matters." 352 Ill. App. 3d at 763. During the discussion in chambers which took place shortly after the circuit court tendered copies of the five checks in question which did not contain the language "payment for the floor," the circuit court pointed out that plaintiff had not disclosed to it or any prior court the fact that the checks had been altered. Plaintiff's counsel responded:

"[PLAINTIFF'S ATTORNEY]: I understand everything you've said, Your Honor. My only response in that regard is that the fact that these checks were altered in the manner they were, the facts are the facts. We can't change that they were altered. But at no point was a representation made...

THE COURT: Counsel, was there a clarification made either to the court or to counsel?

[PLAINTIFF'S ATTORNEY]: No, there was not."

The court subsequently continued:

"THE COURT: Counsel, I would like to also put on the record that when you and your client were in my chambers and we were talking and when all counsel were in chambers prior to jury selection and during discussions on this case, these checks were tendered to me. And they were shown to me. And they were referred to as, 'see, it says here on the checks, payment for the floor.' And, 'see, here, judge, the dates correspond with the floor, and it says here noted his payment for the floor.' "

During that same discussion, plaintiff's counsel stated:

"[PLAINTIFF'S ATTORNEY]: I can't say any more than I have already said about the checks. It's a terrible thing. I wish that I had some knowledge of it because we wouldn't be here today talking about it like this if I had some knowledge of it. But I didn't."

I do not believe that the majority's reliance on the Code and the holding in *Kramer v. Exchange National Bank of Chicago*, 118 Ill. 2d 277 (1987), provide bases for reversing the circuit court in the instant case. Neither party asserted at trial, or before this court, that the Code had anything to do with this case. Further, *Kramer* addressed what effect an alteration made by the holder of a note had on the validity of the note. This is clearly the type of transaction over which the Code would control. In the instant case, plaintiff's counsel conceded that the checks had been altered and the circuit court correctly found that both it and the previously assigned circuit court judge had made rulings regarding summary judgment, discovery and motions *in limine* based on plaintiffs' counsel's arguments which were themselves based on the alterations made to the checks. While plaintiff's actions arguably were not violative of the Code, this fact has no bearing on the issue of whether tendering the altered checks was violative of Supreme Court Rule 137.

Finally, it is important to note that the copies of the five checks were the only documentary evidence in this case that purported to establish with any sort of clarity plaintiff's damages. Here, the original complaint sought damages "in excess of $60,000," the plaintiff testified at his deposition that he paid $42,000 to replace the floor, the amended verified complaint sought $42,000, the five altered checks totaled $46,000. Plaintiffs' successive counsel had fought defendants' discovery requests for more documents relating to the amount paid for the repairs to the floor. As the circuit court's decision was informed, based largely on valid reasons and the decision followed logically the application of the reasons stated, I would affirm the circuit's dismissal of plaintiffs' case.

The majority raise an excellent point regarding *Mrs.* Cirrincione's interest in this lawsuit as providing another basis to reverse the circuit court's dismissal. However, plaintiffs never raised this issue in the circuit court proceedings, nor did they raise this issue on appeal. As an argument not raised in the trial court, and presented for the first time on appeal is waived, I would find that plaintiffs waived this issue by failing to raise it at all. See *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 791 N.E.2d 1291 (2003).

The majority make some excellent suggestions as to alternative remedial actions which the circuit court could have taken rather than

dismissal with prejudice. Similarly, plaintiffs' trial counsel's suggestion of instructing the jury pursuant to Illinois Pattern Jury Instructions, Civil, No. 5.01 (Supp. 2003) (Failure to Produce Evidence or a Witness) was also creative. To these suggestions I would add that the trial court could have granted a mistrial, with plaintiffs ordered to pay the costs and attorney fees incurred by defendants during the truncated trial. I am aware that trial courts are extremely reluctant to grant mistrials as they are perceived as resulting in a waste of effort and resources. However, as shown again in this case, courts of review are similarly reluctant to affirm the dismissal of lawsuits with prejudice as a sanction, except in the most extreme circumstances. The situation faced by the circuit court in the instant case is, unfortunately, an extremely common one. When a party violates the supreme court rules, the circuit court has discretion to formulate a remedy which should reflect the underlying purpose of the rule. *Boland v. Kawasaki Motors Manufacturing Corp., USA*, 309 Ill. App. 3d 645, 652-53, 722 N.E.2d 1234 (2000). The parties should assist the circuit court in this determination by suggesting workable solutions rather than merely asking for dismissal on the one hand, or arguing that no remedial action is needed on the other. To accomplish this, judges and attorneys should acquaint themselves with the various alternative remedies available. Of course, the best way to avoid this type of situation is for the parties to engage in full and *timely* discovery.

As I agree with the majority that this was a good-faith lawsuit, I would reverse the circuit court's order granting defendants all of their attorney fees and I would remand this case for an evidentiary hearing as to this issue. Of course, this is yet another remedy which the plaintiffs did not request.